BRANCART & BRANCART
 Elizabeth Brancart (SBN 122092)
 *ebrancart@brancart.com*
 Christopher Brancart (SBN 128475)
 *cbrancart@brancart.com*
P.O. Box 686
Pescadero, CA  94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LINCOLN JONES, JR. and MUYESSER NILE JONES, individually and as trustees of the Lincoln and M. Nile Jones Revocable Trust; and PROJECT SENTINEL, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, <br><br> Defendant. | Case No. 5:13-cv-02390-LHK <br><br> **FIRST AMENDED COMPLAINT** |

## I.  INTRODUCTION

1.     Plaintiffs Lincoln Jones, Jr. and Muyesser Nile Jones, local landlords, and Project Sentinel, Inc., a local fair housing agency, sue defendant Travelers Casualty Insurance Company of America for refusing to insure the dwellings owned by landlords who rent to tenants using Section 8 vouchers to help pay their rent.  Plaintiffs claim that Travelers' refusal to insure discriminated on the basis of sex, race, disability, familial status and age by making housing otherwise unavailable and by interfering with the fair housing rights of landlords and their current and potential Section 8 tenants in violation of the federal Fair Housing Act

1  and California Fair Employment and Housing Act.

2  ## II.  JURISDICTION AND VENUE

3  2.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331

4  in that the claims alleged herein arise under the laws of the United States.  The

5  Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and

6  determine plaintiffs' state claims because those claims are related to plaintiffs'

7  federal law claims and arise out of a common nucleus of related facts.  Plaintiffs'

8  state law claims are related to plaintiffs' federal law claims such that those claims

9  form part of the same case or controversy under Article III of the United States

10  Constitution.  The Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that

11  the matter in controversy exceeds the sum or value of $75,000, exclusive of

12  interest and costs, and is between citizens of different States.

13  3.     Venue is proper pursuant to 28 U.S.C. § 1391(b) in that the claims

14  alleged herein arose within Santa Clara County, California.

15  ## III.  INTRADISTRICT ASSIGNMENT

16  4.     Assignment to the San Jose Division is proper pursuant to Local Rule

17  3-2 because the action arose in Santa Clara County.

18  ## IV.  PARTIES

19  5.     Plaintiffs Lincoln Jones, Jr. and Muyesser Nile Jones, a married

20  couple, own and operate two small apartment buildings located in San Jose,

21  California, which they hold in the name of the Lincoln and M. Nile Jones

22  Revocable Trust.  Mr. and Mrs. Jones are the trustees and trustors of that trust.

23  Mr. and Mrs. Jones are citizens of the State of California.

24  6.     Plaintiff Project Sentinel, Inc. is  a nonprofit corporation with a

25  mission of fostering diversity and equal opportunity in housing.  It has several

26  offices in Northern California and is headquartered in Santa Clara, California.  It

27  provides fair housing services, among other things, throughout Santa Clara

28  County.  One of its specific purposes and goals is the elimination of all forms of

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

illegal housing discrimination.  To this end, Project Sentinel's activities include, but are not limited to: (1) investigating allegations of discrimination; (2) conducting tests of housing facilities to determine whether equal opportunity in housing is provided; (3) taking such steps as it deems necessary to assure such equal opportunity and to counteract and eliminate discriminatory housing practices; and, (4) providing outreach and education to the community regarding fair housing.  Project Sentinel is a corporation incorporated under the laws of the State of California with its principal place of business in that State.

7.     Travelers Casualty Insurance Company of America ("Travelers") is an insurance company authorized to do business in California.  Travelers is a corporation incorporated under the laws of the State of Illinois with its principal place of business in the State of Connecticut.

## V.  FACTS

### A.  THE SECTION 8 PROGRAM

8.     The Housing Choice Voucher Program (hereinafter referred to as "Section 8") is the federal government's largest program for assisting very low-income families, the elderly, and the disabled to afford decent, safe, and sanitary housing in the private market.  Under that program, local public housing authorities ("PHAs") receive federal funds from the United States Department of Housing and Urban Development to issue Section 8 vouchers to qualified persons and administer the program.  The recipient of the Section 8 voucher is free to choose any housing that meets the requirements of the program, including apartments, townhouses and single-family homes, and is not limited to units located in subsidized housing projects.

9.     When a person or family is issued a Section 8 voucher, they are responsible for finding a suitable dwelling of their choice where the owner agrees to rent under the Section 8 program.  Rental dwellings must meet minimum standards of health and safety and rental charges may not exceed certain ceilings

as determined by the PHA.  Once the PHA approves a dwelling, the voucher holder and the landlord sign a lease and, at the same time, the landlord and the PHA sign a housing assistance payments contract, which runs for the same term as the lease.

10.    The PHA pays the Section 8 housing subsidy to the landlord directly on behalf of the voucher holder.  The voucher holder is then responsible for paying the difference between the actual rent charged by the landlord and the amount subsidized by the Section 8 program.

### B. THE CODY WAY APARTMENTS

11.    Since the 1980s, plaintiffs Lincoln and Muyesser Jones have owned two apartment buildings located in San Jose, California – a ten-unit building located at 1883 Cody Way and a seven-unit building located at 1895 Cody Way (the "Cody Way apartments").

12.    For more than a decade, Mr. and Mrs. Jones have rented dwellings at the Cody Way apartments to persons who utilize Section 8 vouchers to help make their rental payments.  In each instance, Mr. and Mrs. Jones have entered into housing assistance payments contracts with the Housing Authority of the County of Santa Clara, the local PHA serving San Jose and Santa Clara County.  For Mr. and Mrs. Jones, the Section 8 program is an important source of tenants and steady source of revenue.

13.    At all times since they have owned and operated the Cody Way apartments, Mr. and Mrs. Jones have maintained policies of property and liability insurance on both properties.  Property insurance is required as a condition for their mortgage loans on the Cody Way apartments.  Before purchasing insurance from Travelers, Mr. and Mrs. Jones had insured the Cody Way apartments with the same insurance company for almost ten years.  During that period of time, they never made or had a claim made under their policies.

14.    Prior to the expiration of their existing insurance policies in February

2012, an insurance broker solicited Mr. and Mrs. Jones, suggesting that they could obtain lower premiums for the Cody Way apartments with another insurance company.  In response, Mr. and Mrs. Jones switched insurers, purchasing policies on both of the Cody Way properties for the policy period from February 1, 2012 to February 1, 2013, from Travelers.  The policies included property and liability coverage.

15.    In August 2012, a visitor to a resident of one of the Cody Way apartments units slipped and fell on the stairs.  Upon learning of the incident, Mrs. Jones notified Travelers of the possibility of a claim, although no claim was ultimately made by the visitor.  In the course of investigating the possible claim, Travelers became aware that Mr. and Mrs. Jones had Section 8 tenants renting at the Cody Way apartments.

16.    On November 16, 2012, Travelers notified Mr. and Mrs. Jones that Travelers would not be renewing the policies for the Cody Way apartments. Travelers' stated reason for non-renewal was the fact that the Cody Way apartments had Section 8 tenants.  The non-renewal was effective February 1, 2013.  Travelers' decision to cancel the insurance on the Cody Way apartments based solely on the presence of their Section 8 tenants surprised and upset Mr. and Mrs. Jones.

17.    In December 2012, Mr. and Mrs. Jones received notice from their mortgage company notifying them that it had received notice that the insurance policies on the Cody Way apartments had been cancelled or not renewed.  The mortgage company advised Mr. and Mrs. Jones that they were required to have insurance on the properties as a condition for their mortgage loans.

18.    Mrs. Jones immediately began searching for replacement insurance coverage.  She encountered difficulty finding replacement insurance and, as Travelers' cancellation deadline drew closer, Mrs. Jones became increasingly anxious that she would be unable to find affordable replacement insurance.  Mrs.

1   Jones finally was able to secure replacement insurance in February 2013, though
2   the premiums were more expensive than those paid under their cancelled Travelers
3   policies.

4   **C. PLAINTIFFS CONTACT PROJECT SENTINEL**

5   19.   On December 14, 2012, Mrs. Jones contacted Project Sentinel
6   concerning Travelers' cancellation of the insurance on the Cody Way apartments
7   because of occupancy by Section 8 tenants.  Project Sentinel investigated Mrs.
8   Jones' complaint and counseled her regarding her fair housing rights.  Project
9   Sentinel engaged in education and outreach efforts, including mailing letters and
10  informational flyers to PHAs, local landlords and apartment owner organizations
11  throughout California, alerting them to the fair housing issues related to Travelers'
12  refusal to insure buildings with Section 8 tenants.  In those mailings, Project
13  Sentinel described the disparate impact Travelers' policy has on persons protected
14  under the Fair Housing Act and urged the recipients to contact the state insurance
15  commissioner to help stop the practice.

16  **D. DISCRIMINATORY HOUSING PRACTICES**

17  20.   Travelers engages in a pattern or practice of discrimination in
18  violation of the federal and state fair housing laws.  Travelers' discriminatory
19  housing practices include, but are not limited to, the following:

20      a.   Refusing to provide property or hazard insurance for dwellings
21      because of race, sex, disability, familial status and age;

22      b.   Providing property or hazard insurance services differently because of
23      race, sex, disability, familial status and age;

24      c.   Refusing to provide property or hazard insurance for dwellings
25      because of the protected status of persons intending to reside in those
26      dwellings;

27      d.   Coercing persons, either orally, in writing, or by other means, to deny
28      or limit the benefits provided by that person in connection with the rental of

a dwelling because of race, sex, disability, familial status and age;

e.  Threatening or interfering with persons on account of their having aided or encouraged other persons to exercise or enjoy rights protected under the fair housing laws;

f.  Following a practice or policy that has a discriminatory effect by actually or predictably resulting in a disparate impact on persons on the basis of race, sex, disability, familial status and age; and,

g.  Following a practice or policy that creates, increases, reinforces or perpetuates segregated housing patterns because of race, sex, disability, familial status and age.

## E.  DISCRIMINATORY IMPACT

21.  The persons injured by Travelers' refusal to insure landlords who rent to persons using Section 8 vouchers include the landlords who already rent or seek to rent to persons using Section 8 vouchers as well as the Section 8 renters and rental applicants themselves.

22.  Travelers' practices actually or predictably result in a disparate impact on persons in classes protected by the fair housing laws, or create, increase, reinforce or perpetuate segregated housing patterns because of race, sex, disability, familial status and age.

23.  For example, the group of persons who use Section 8 vouchers to help pay their rent in Santa Clara County are:

•  Five times more likely to be a female headed household as compared to all renter households in Santa Clara County;

•  Three times more likely to be a black headed household as compared to all renter households in Santa Clara County;

•  Three times more likely to be headed by a householder over age 60 as compared to all renter households in Santa Clara County;

•  Two times more likely to be a household with at least one member

1    with a disability as compared to all households in Santa Clara County; and,

2        •    Five times more likely to be a female headed household with children

3    as compared to all households in Santa Clara County.

4        24.    The group of persons who use Section 8 vouchers to help pay their

5    rent in California are:

6        •    Five times more likely to be a female headed household as compared

7    to all renter households in California;

8        •    Three times more likely to be a black headed household as compared

9    to all renter households in California;

10        •    Two times more likely to be headed by a householder over age 60 as

11    compared to all renter households in California;

12        •    Almost two times more likely to be a household with at least one

13    member with a disability as compared to all households in California; and,

14        •    Five times more likely to be a female headed household with children

15    as compared to all households in California.

16        25.    As a result, Travelers' policy or practice actually or predictably

17    results in a significantly disproportionate impact on the basis of sex, race,

18    disability, familial status and age on persons seeking to utilize Section 8 vouchers,

19    making housing unavailable and interfering with the ability of landlords, including

20    Mr. and Mrs. Jones, to offer housing opportunities to tenants and applicants

21    protected under the federal and state fair housing laws.

22                        **F.  DISCRIMINATORY TREATMENT**

23        26.    In the United States as a whole, households participating in the

24    Section 8 program are predominantly minority and predominantly female headed.

25    In fact, almost 50% of those households are black and almost 50% are headed by

26    females with children.  In some cities, Section 8 households are overwhelmingly

27    black and/or headed by single women with children.  There is a widely held belief

28    that the Section 8 program serves minorities.

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

8

27.     Plaintiffs' prefiling investigation indicates that Travelers has no reasoned basis in fact or experience to support its refusal to insure landlords who rent to Section 8 tenants.  Plaintiffs anticipate that a reasonable opportunity for discovery will support the conclusion that Travelers' refusal to insure apartment owners who rent to persons using Section 8 vouchers is based on perceptions of Section 8 voucher holders as minority, female-headed households and the associated negative stereotypes that such households are likely to cause damage to property and engage in criminal activity.

28.     By refusing to insure landlords like the Joneses, Travelers engages in "redlining" of landlords who rent to Section 8 tenants in the same way insurers have declined to write insurance for dwellings located in geographic areas that are in fact or perceived to be minority neighborhoods.  For Travelers, the presence of Section 8 tenants operates as a proxy for an undesirable risk based on Traveler's negative, stereotype-based assumptions in the same way other insurers have used a property's location in a minority neighborhood as a proxy to refuse to insure based on negative, stereotype-based assumptions concerning the residents of those neighborhoods.  The redlining of Section 8 buildings by Travelers necessarily and predictably results in discrimination against persons protected by the fair housing laws and Travelers knew or reasonably should have known that it would do so.

29.     Moreover, because more than one-half of Section 8 voucher households live in neighborhoods that are overwhelmingly minority, Travelers knew or should have known that its refusal to insure landlords who rent to Section 8 tenants would necessarily and predictably cause it to insure fewer dwellings located in minority neighborhoods, further redlining those neighborhoods and depriving them of necessary insurance services.

## G. INJURIES

30.     By reason of Travelers' discriminatory and unlawful practices, Lincoln and Muyesser Jones have suffered and will in the future suffer injury,

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

including economic losses, inconvenience, anxiety, embarrassment, humiliation and other emotional distress and violation of their civil rights.  Accordingly, Mr. and Mrs. Jones are entitled to compensatory damages.

31.   In doing the acts of which plaintiffs complain, Travelers and its agents and employees intentionally or recklessly violated Mr. and Mrs. Jones' federally protected rights and acted with malice and oppression.  Accordingly, plaintiffs are entitled to punitive damages.

32.   Travelers' discriminatory and unlawful practices have impaired and frustrated Project Sentinel's mission to eliminate discriminatory housing practices and assure equal housing opportunities, and have required Project Sentinel to devote resources to identify and counteract Travelers' unlawful practices.  Project Sentinel seeks declaratory and injunctive relief only to remedy its injuries caused by Travelers' policies.

33.   There now exists an actual controversy between the parties regarding Travelers' duties under federal and state fair housing laws.  Accordingly, plaintiffs are entitled to declaratory relief under federal and state law.

34.   Unless enjoined, Travelers and its agents or employees will continue to engage in the unlawful acts and the pattern or practice of discrimination described above.  Plaintiffs have no adequate remedy at law.  Plaintiffs are now suffering and will continue to suffer irreparable injury from Travelers' acts and the pattern or practice of discrimination unless relief is provided by this Court.  Accordingly, plaintiffs are entitled to injunctive relief under federal and state law.

35.   The sum or value of Mr. and Mrs. Jones' California Fair Employment and Housing Act claims for compensatory and punitive damages, in addition to the estimated award of plaintiffs' attorneys' fees under Government Code § 12989.2, exceeds the sum or value of $75,000, exclusive of interest and costs.

//

//

## VI.  CLAIMS

### A.  FIRST CLAIM

### Violation of the Fair Housing Act

36.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

37.    Travelers injured plaintiffs by committing discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*

### B.  SECOND CLAIM

### Violation of the Fair Employment and Housing Act

38.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

39.    Travelers injured plaintiffs by committing unlawful practices in violation of the Fair Employment and Housing Act, California Government Code § 12900 *et seq.*

## VII.  RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

1.    A declaration that Travelers' refusal to insure landlords who rent to tenants on the Section 8 program violates the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, and the California Fair Employment and Housing Act, Government Code §§ 12900 *et seq.*;

2.    An order and judgment enjoining Travelers, its agents, employees, successors, and all other persons in active concert or participation with it from refusing to insure, or cancelling the insurance of, landlords on the ground that they rent to tenants in the Section 8 program;

3.    An order and judgment requiring Travelers, its agents, employees, successors, and all other persons in active concert or participation with it to develop and implement policies, practices, and procedures that do not discriminate against persons protected by the fair housing laws;

1    4.    An award of compensatory damages to plaintiffs Lincoln Jones and

2  Muyesser Jones, according to proof;

3    5.    An award of punitive damages to plaintiffs Lincoln Jones and

4  Muyesser Jones, according to proof;

5    6.    An award of attorneys' fees and costs; and,

6    7.    Such other and further relief as the Court may deem just and proper.

7  Dated:  August 6, 2013.

8                                      Respectfully submitted,

9                                      BRANCART & BRANCART

10

11                                     /s/ *Elizabeth Brancart*
                                       _____
12                                     Elizabeth Brancart
                                       Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

1

2

### <u>CERTIFICATE OF SERVICE</u>

3        On August 6, 2013, I served electronically, via the Court's ECF system, a copy of the attached **FIRST AMENDED COMPLAINT** upon the following attorneys:

4

5    Melissa A. Dubbs
     Carlson, Calladine & Peterson LLP
6    353 Sacramento Street
     San Francisco, CA 94111
7    Fax:  (415) 391-3898
     Email:  mdubbs@ccplaw.com

8

9                                    */s/ Elizabeth Brancart*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28