UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| LINCOLN JONES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, <br><br> Defendant. | Case No.:13-CV-02390-LHK <br><br> **ORDER GRANTING MOTION TO STRIKE, AND DENYING MOTION TO EXPEDITE HEARING DATE** <br><br> Re: Dkt. No. 133, 148 |

Before the Court is Plaintiffs' motion to strike Defendant's expert reports and to preclude Defendant's use of undisclosed evidence pursuant to Rule 37(c) ("Motion to Strike"). ECF No. 133. Plaintiffs also filed an administrative motion to expedite the hearing for Plaintiffs' Motion to Strike. ECF No. 148 ("Motion to Expedite"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing for the Motion to Strike, currently scheduled for May 28, 2015, at 1:30 p.m. Having considered the parties' submissions, the record in this case, and the applicable law, the Court GRANTS the Motion to Strike and DENIES the Motion to Expedite as moot, for the reasons stated below.

**I.  BACKGROUND**

The instant lawsuit stems from Plaintiffs' allegation that Defendant refuses to insure the

1

Case No.: 13-CV-02390-LHK
ORDER GRANTING MOTION TO STRIKE, AND DENYING MOTION TO EXPEDITE HEARING

dwellings owned by landlords who rent to tenants using Section 8 vouchers to help pay rent. *See* ECF No. 1. At issue in the instant motions are two spreadsheets, TRAV 157202 and 157201. ECF No. 133, at 3-4. Defendant produced these spreadsheets to Plaintiffs on December 4, 2014. ECF No. 133, at 3-4. Plaintiffs argue that these spreadsheets should be struck because, even though Plaintiffs requested the data contained in the spreadsheets during fact discovery, the spreadsheets and underlying data were not produced until December 4, 2014, about three weeks after fact discovery closed on November 14, 2014. *Id.* at 1.

Before discussing the merits of Plaintiffs' motion, the Court finds it useful to summarize the spreadsheets at issue. TRAV 157202 is a spreadsheet of approximately 25,000 data entries reflecting Defendant's underwriting notes and claim notes that relate to, among other things, subsidized housing, public housing, government housing, and Section 8 housing. ECF No. 134-3, at 9; ECF No. 133, at 3. TRAV 157201 is a spreadsheet that contains premium and loss information from approximately 5,000 insurance policies that Defendant identified as relating to subsidized housing. ECF No. 133, at 3; ECF No. 134-3, at 10. Defendant compiled TRAV 157201 by narrowing and using the data from TRAV 157202. *See* ECF No. 134-3, at 10. In other words, TRAV 157201 is an analysis of a selection of data contained on TRAV 157202.

Defendant compiled the data contained on TRAV 157202 on October 1, 2014, approximately six weeks before the close of fact discovery. ECF No. 134-3, at 10. Defendant used the data on TRAV 157202 to create TRAV 157201, a process which was initially completed on November 20, 2014, approximately one week after the close of fact discovery.[1] *See* ECF No. 140, at 8. Defendant did not produce TRAV 157202 and TRAV 157201 until December 4, 2014, about three weeks after fact discovery closed.

## II. LEGAL STANDARD

Rule 26(e)(1) of the Federal Rules of Civil Procedure requires all parties to supplement or

---

[1] After Defendant initially compiled the data on TRAV 157201 on November 20, 2014, Defendant subsequently amended the spreadsheet with additional information. ECF No. 140, at 8. TRAV 157201, as it was produced to Plaintiffs, was completed on December 2, 2014. *Id.*

2
Case No.: 13-CV-02390-LHK
ORDER GRANTING MOTION TO STRIKE, AND DENYING MOTION TO EXPEDITE HEARING

correct, among other things, responses to discovery requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The parties are expected to supplement and/or correct their disclosures promptly when required under that Rule, without the need for a request from opposing counsel or an order from the Court. *See Oracle USA, Inc., et al. v. SAP AG, et al.*, 264 F.R.D. 541, 544 (N.D. Cal. 2009). In addition, Rule 37 mandates that a party's failure to comply with the obligations under Rule 26(e)(1) results in that party being precluded from "use [of] that information . . . to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is "self-executing" and "automatic." *Yeti by Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Once non-compliance is shown, the burden is on the party who failed to comply to demonstrate that it meets one of the two exceptions to mandatory sanctions. *Apple, Inc. v. Samsung Electronics Co.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *4 (N.D. Cal. Aug. 2, 2012).

**III. ANALYSIS**

The Court first discusses whether Defendant had an obligation to supplement its responses to Plaintiffs' requests for production, pursuant to Rule 26(e)(1). The Court will then discuss whether Defendant's failure to supplement was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).

**A. Duty to Supplement Pursuant to Rule 26(e)(1)**

As previously discussed, under Rule 26(e)(1) Defendant had an obligation to supplement its responses to Plaintiffs' requests for production if Defendant learned that its responses were incomplete or incorrect. Fed. R. Civ. P. 26(e)(1). As a preliminary matter, the Court must first determine whether TRAV 157202 and 157201 or their underlying data were responsive to Plaintiffs' discovery requests. *See Corbello v. Devito*, No. 2:08-CV-00867-RCJ, 2011 WL

3

Case No.: 13-CV-02390-LHK
ORDER GRANTING MOTION TO STRIKE, AND DENYING MOTION TO EXPEDITE HEARING

2413434, at *4 (D. Nev. June 10, 2011) (Rule 26(e) obligation to supplement discovery responses triggered if party finds or becomes aware of "additional responsive documents"). The Court determines that this was the case here.

Both TRAV 157202 and 157201 contain data reflecting Defendant's underwriting notes and claim notes that relate to, among other things, subsidized housing, public housing, government housing, and Section 8 housing, as well as premium and loss information from insurance policies that relate to subsidized housing. *See* ECF No. 134-3, at 9-10. Plaintiffs requested information related to these subjects several times. For instance, in August 2013 Plaintiffs served Plaintiffs' First Request for Production of Documents or Things on Defendant. ECF No. 133-1; Brancart Decl. in Support of Motion to Strike, ¶ 7. In that request, Plaintiffs asked for, among other things: "(Request No. 7) any document relating to actual or reasonably anticipated loss experience associated with insuring residential rental properties occupied by Section 8 tenants"; "(Request No. 9) any document relating to actual or reasonably anticipated loss experience associated with government subsidized housing"; and "(Request No. 21) any document or thing, including emails or other ESI" that "comments on, refers to, or otherwise discusses," *inter alia*, "Section 8 program," "subsidized housing," or "governmental subsidized housing." ECF No. 133-1, at 12-14, 22. Plaintiffs also requested that Defendant run key word searches in Defendant's ESI and produce the results for certain terms, including the terms "subsidized housing," "public housing," and "government housing." *Id*. at 22. These are among the search terms that Defendant used to compile the data in TRAV 157202 and 157201. ECF No. 134-3 at 9, n.5. TRAV 157202 and 157201, as well as the data underlying both spreadsheets, would have been responsive to these requests because both TRAV 157202 and 157201 reflect Defendant's underwriting notes, claim notes, and premium and loss information related to subsidized housing. *See* ECF No. 134-3, at 9-10.

Subsequently, Plaintiffs served Plaintiffs' Third Requests for Production of Documents or

Things on Defendant.[2] *See* ECF No. 144-1, at 21. There, Plaintiff requested, among other things: "(Request No. 70) reports, studies, summaries, or analyses of which Travelers is aware regarding or reflecting the loss ratio or claims rate of subsidized, government funded or public housing complexes"; and "(Request No. 71) reports, studies, summaries, or analyses of which Travelers is aware regarding or reflecting the loss ratio or claims rate of residential rental properties with Section 8 tenants." ECF No. 144-1, at 23. Again, TRAV 157202 and 157201, as well as the data underlying both spreadsheets, would have been responsive to these requests.

However, it is undisputed that Defendant did not produce TRAV 157202 or 157201, or the data underlying these spreadsheets, during fact discovery. *See* ECF No. 140, at 1 (Defendant's opposition stating that the "two spreadsheets about which Plaintiffs complain were not previously produced"). Instead, nearly a year after receiving the first of the document requests detailed above, on October 1, 2014, Defendant compiled TRAV 157202 by searching its databases for, among other terms, "subsidized housing," "public housing," and "government housing." ECF No. 134-3 at 9, n.5. These are the same search terms that Plaintiffs requested Defendant run in Plaintiffs' Request for Production No. 21, which Plaintiff served in August 2013. *See* ECF No. 133-1, at 22. Although Defendant compiled TRAV 157202 on October 1, 2014, Defendant did not produce TRAV 157202 until December 4, 2014, about three weeks after fact discovery closed on November 14, 2014. Furthermore, because Defendant generated TRAV 157201 by using the data contained in TRAV 157202, had Defendant produced TRAV 157202 timely, Plaintiffs would have had access to the data on both spreadsheets before the close of fact discovery.

Defendant's untimely disclosure is sufficient to trigger a violation of Rule 26(c). Moreover, Defendant's untimely disclosure is exacerbated by the fact that Defendant affirmatively represented to Plaintiffs during fact discovery that Defendant did not track the data underlying TRAV 157202 and 157201, and that such data would be too burdensome to produce. For instance,

---

[2] It is not clear from the parties' briefing or the attached exhibits when Plaintiffs served their third requests for production on Defendant. However, Defendant served responses on Plaintiffs on May 1, 2014. ECF No. 144-1, at 26.

5

Case No.: 13-CV-02390-LHK
ORDER GRANTING MOTION TO STRIKE, AND DENYING MOTION TO EXPEDITE HEARING

in Plaintiffs' First Set of Requests for Admission, Plaintiffs asked Defendant to admit that Defendant "has no data identifying the loss experience of apartments with Section 8 tenants separately from the loss experience of apartments without Section 8 tenants." ECF No. 10-3, at 3. Defendant responded that it "does not maintain in the ordinary course of its business a separate database of loss experience specific to Section 8 tenants." *Id.* at 4. However, data regarding Defendant's loss experience with Section 8 tenants was among the data underlying TRAV 157202 and 157201. *See* ECF No. 134-3, at 9-10.

As another example, in Defendant's discovery responses, Defendant asserted that Plaintiffs' request for documents or ESI related to, *inter alia*, subsidized housing, public housing, and government housing was unreasonably burdensome, and that the cost and burden to search for such documents "far outweighs the likely benefit of the discovery." *See* ECF No. 133-1, at 15-16; *see also* ECF No. 133-2, at 6-7 (responding to interrogatory regarding whether Defendant has a "factual basis on which to identify its loss experience for apartments . . . that rent to Section 8 tenants," that Defendant "does not specifically track whether a building includes Section 8 tenants," and that it would be "burdensome" to "locate such data through a manual review of relevant files."). In fact, at a hearing before Judge Grewal of this Court on November 4, 2014 (a month *after* Defendant compiled the data underlying TRAV 157202), Defendant stated that it was "not reasonable" to require Defendant to search for, among other things, the underwriting documents referring to "Section 8" or "subsidized housing" because that would impose too much of a "burden." ECF No. 115, at 8. However, this data, which Defendant claimed would be too burdensome to compile, is the same data underlying both TRAV 157202 and 157201.

In addition, Defendant's failure to timely supplement its responses is *further* exacerbated by the fact that Defendant also represented to Plaintiffs during fact discovery that, to the extent Defendant was in possession of data regarding the risk of loss associated with insuring the housing for Section 8 tenants, Defendant would not rely on such data to support Defendant's claims or defenses. *See* ECF No. 133, at 5. For instance, Defendant's Rule 30(b)(6) designee testified on

September 19, 2014 that Defendant had not "done the research" into the risk of loss associated with insuring housing that included Section 8 tenants. ECF No. 133-5, at 165. In addition, when asked in Plaintiffs' Interrogatory No. 18 to state the "factual basis" for Defendant's decision not to insure government subsidized housing or Section 8 housing, Defendant did not mention the existence of actuarial or loss experience data as a basis for Defendant's practice. ECF No. 133-4, at 2-8; ECF No. 144, at 1 n.2. It was only after the close of fact discovery that Defendant produced TRAV 157202 and 157201 and raised—for the first time—the argument that those spreadsheets "demonstrate[] the business necessity of Travelers' underwriting guidelines," ECF No. 140, at 16. This was an argument that Defendant had not previously raised during fact discovery.

For the reasons stated above, Plaintiffs have shown that Defendant had an obligation to timely supplement Defendant's response to Plaintiffs' requests for production with TRAV 157202 and 157201, or the data underlying those spreadsheets. *See* Fed. R. Civ. P. 26(e). Defendant did not. Indeed, Defendant repeatedly represented that it did not track the data underlying TRAV 157202 and 157201, that it would be burdensome to locate such data, or that Defendant would not be using such data to support its claims or defenses.

**B. Whether Failure to Comply Was Substantially Justified or Harmless**

The Court next discusses whether Defendant's failure to comply with Rule 26(e) was "substantially justified or harmless" such that striking the evidence at issue would be improper. Fed. R. Civ. P. 37(c)(1).

The Court finds that Defendant's failure to timely produce TRAV 157202 and 157201 or their underlying data was not harmless, for several reasons. First, by not disclosing the spreadsheets or their underlying data before the close of fact discovery, Defendant has prevented Plaintiffs from conducting further fact discovery regarding Defendant's newly-advanced justification for not insuring subsidized housing or Section 8 housing, i.e., that TRAV 157202 and 157201 "demonstrate[] the business necessity of Travelers' underwriting guidelines." ECF No. 140, at 16. Defendant has also prevented Plaintiffs from conducting additional fact discovery

regarding the data contained in TRAV 157202 and 157201, or the chance to confirm the spreadsheets' and the data's accuracy. Furthermore, Defendant has deprived Plaintiffs of the chance to incorporate whatever additional facts Plaintiffs may have learned about the data in TRAV 157202 and 157201 in Plaintiffs' opening expert reports, which were served on December 19, 2014, *see* ECF No. 122, or rebuttal expert reports and dispositive motions, both of which are due on February 5, 2015, *see* ECF No. 104.

Moreover, Plaintiffs are further prejudiced by the fact that Plaintiffs did not otherwise have access to the data underlying TRAV 157202 and 157201. Indeed, according to Defendant, Defendant is the sole source of data contained in these spreadsheets. *See* ECF No. 140, at 2 (stating that the "data compiled by Travelers" was "compiled at great expense and is *not available elsewhere*") (emphasis added). In addition, the fact that Defendant affirmatively represented to Plaintiffs that it would be too burdensome to compile the data underlying TRAV 157202 or 157201, or that Defendant would not be relying on such data to support its claims and defenses, sent the message to Plaintiffs that discovery related to the data in these spreadsheets was unnecessary.

Defendant argues that Plaintiffs were not prejudiced because Defendants produced TRAV 157202 and 157201 to Plaintiffs on December 4, 2014, two weeks before opening expert reports were due. ECF No. 140, at 16-17. Therefore, Defendant argues that Plaintiffs "have ample opportunity for expert discovery and preparation of their own rebuttal reports," and will have had "substantially more time to review the data relied upon by Mr. Chansky (Defendant's expert) for Plaintiffs' rebuttal reports than Mr. Chansky himself had to prepare the report." *Id*. at 19. Defendant's argument misses the mark. As this Court has previously observed, even though "expert discovery has not yet concluded, the experts [are] in effect locked-in to the factual record as of the time fact discovery closed." *Apple, Inc. v. Samsung Elec. Co.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012). Therefore, Plaintiffs "could not test the factual basis for the newly amended contentions by conducting additional discovery." *Id*.; *see also Ritchie*

*Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 160 (S.D.N.Y. 2012) (holding that untimely disclosure of material related to expert reports could not be cured by permitting additional expert discovery, because the party that received the untimely disclosure "undoubtedly would have pressed for additional documents and asked additional deposition questions of fact witnesses . . . By making their [disclosure] after the close of fact discovery, Plaintiffs effectively deprived Defendants of the tools necessary to challenge the underlying assumptions of Plaintiffs' expert—*i.e.*, the documents or and deposition testimony that would speak to the factual matters being evaluated by the expert."). Accordingly, Defendant's argument is not persuasive, and the Court finds that Defendant's failure to timely disclose TRAV 157202 and 157201 was not harmless.

Nor was Defendant's failure to timely disclose TRAV 157202 and 157201 substantially justified. Defendant argues that it did not disclose TRAV 157202 and 157201 earlier because the spreadsheets did not exist until they were created at the direction of Defendant's attorneys in connection with expert discovery. *See* ECF No. 140, at 22. Defendant further argues that Defendant was under no obligation to create TRAV 157202 and 157201 in response to Plaintiffs' discovery requests. *Id*. at 12. Again, this argument misses the point. While Defendant may be correct that Defendant was not obligated to create documents in response to discovery requests, *see Van v. Wal-Mart Stores, Inc.*, No. C 08-5296 PSG, 2011 WL 62499, at *1 (N.D. Cal. Jan. 7, 2011), Defendant compiled the data underlying TRAV 157202 and 157201 on Defendant's own volition by October 1, 2014. ECF No. 134-3, at 10. This was *six weeks* before the close of fact discovery. Once Defendant had data in hand that was responsive to Plaintiffs' discovery requests, Defendant had an obligation to timely produce it, especially after Defendant represented for months that it either would be too burdensome to compile such data, or that Defendant would not rely on such data to support Defendant's claims or defenses. *See* Fed. R. Civ. P. 26(e)(1) (requiring party to timely supplement a prior response to a request for production if "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if

additional or corrective information has not otherwise been made known to the other parties during the discovery process"). Moreover, Defendant should not have misled the Plaintiffs about the existence of such data, the burden to locate such data, and whether Defendant would use such data to support its claims or defenses.

Finally, Defendant argues that lesser sanctions would be appropriate, *see* ECF No. 140, at 11-12, but does not detail what those lesser sanctions might be. In any event, the Court concludes that lesser sanctions would not be appropriate here. Defendant, by producing the spreadsheets after the close of fact discovery, has prevented Plaintiffs from conducting further fact discovery related to the spreadsheets and incorporating Plaintiffs' findings into Plaintiffs' opening or rebuttal expert reports, or dispositive motion. Therefore, the only way to restore both parties to equal footing with respect to the data on TRAV 157202 and 157201 would be to preclude Defendant from using it.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant failed to supplement its discovery responses as required by Rule 26(e)(1), and Defendant's failure was not substantially justified or harmless. Therefore, the Court GRANTS Plaintiffs' Motion to Strike. The Court strikes any portions of Defendant's expert reports that rely on the data in TRAV 157202 and 157201. In addition, Defendant is otherwise precluded from relying on TRAV 157202 and 157201. Plaintiffs' Motion to Expedite, ECF No. 148, is DENIED as moot.

**IT IS SO ORDERED.**

Dated: February 5, 2015

_____
LUCY H. KOH
United States District Judge