# EXHIBIT 8

Case 5:13-cv-02390-LHK   Document 173-8   Filed 03/06/15   Page 1 of 14

```
                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

                         SAN JOSE DIVISION


    LINCOLN JONES, JR. and
    MUYESSER NILE JONES,
    individually and as trustees
    of the Lincoln and M. Nile
    Jones Revocable Trust; and
    PROJECT SENTINEL, INC.,

              Plaintiffs,

    vs.                                  Case No.
                                         CV 13-02390 LHK PSG
    TRAVELERS CASUALTY INSURANCE
    COMPANY OF AMERICA,

              Defendant.
    _____/



              VIDEOTAPED 30(B)(6) AND PERSONAL
                 DEPOSITION OF ANN MARQUART
                         VOLUME I
                     PAGES 1 to 167


    DATE:              Friday, July 25, 2014

    TIME:              10:38 a.m.

    LOCATION:          Carlson Calladine & Peterson, LLP
                       353 Sacramento Street, 16th Floor
                       San Francisco, California


    REPORTED BY:       SHELLEY M. SAILOR
                       California CSR No. 10254

                       MBreporting
                       111 Deerwood Road, Suite 200
                       San Ramon, CA 94583
                       (925) 989-6080
```

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | THE VIDEOGRAPHER:  Good morning.  We are on                      |
|       | 2  | the record in the matter of Jones versus Travelers               |
|       | 3  | venued in the U.S. District Court for the Northern               |
|       | 4  | District of California, San Jose Division.  Case                 |
| 10:38 | 5  | number is CV 13-02390 LHK PSG.                                   |
|       | 6  | Today's date is July 25th, 2014, and the                         |
|       | 7  | time is 10:38 a.m.  We are located at the offices of             |
|       | 8  | Carlson Calladine & Peterson, 353 Sacramento Street,             |
|       | 9  | 16th Floor, San Francisco, California.                           |
| 10:38 | 10 | This is media number one, Volume I of the                        |
|       | 11 | deposition of Ann Marquart.  The videographer is                 |
|       | 12 | Steve Patapoff on behalf of MBreporting.                         |
|       | 13 | Counsel, please state your name and whom                         |
|       | 14 | you represent.                                                   |
| 10:39 | 15 | MR. COOPER:  Michael Cooper for defendant.                       |
|       | 16 | MS. CRISTOL-DEMAN:  Liza Cristol-Deman with                      |
|       | 17 | Elizabeth Brancart on behalf of plaintiffs.                      |
|       | 18 | THE VIDEOGRAPHER:  Will the court reporter                       |
|       | 19 | please swear in the witness.                                     |
|       | 20 | ANN MARQUART,                                                    |
|       | 21 | called as a witness and, having been by me duly                  |
|       | 22 | sworn, was thereupon examined and testified as                   |
|       | 23 | hereinafter set forth.                                           |
|       | 24 | EXAMINATION BY MR. COOPER                                        |
| 10:39 | 25 | Q.  Would you please state your name for the                     |

|  |  |  |
|---|---|---|
|  | 1 | record. |
|  | 2 | A. Ann Marquart. |
|  | 3 | Q. And, Ms. Marquart, have you ever had your |
|  | 4 | deposition taken before? |
| 10:39 | 5 | A. Yes, I have. |
|  | 6 | Q. On how many occasions? |
|  | 7 | A. More than five.  I don't know how many. |
|  | 8 | Q. So you're somewhat familiar with the |
|  | 9 | process. |
| 10:39 | 10 | A. Yes, I am. |
|  | 11 | Q. Have you had your deposition taken in the |
|  | 12 | last five years? |
|  | 13 | A. Yes, I have. |
|  | 14 | Q. On how many occasions? |
| 10:39 | 15 | A. A couple occasions. |
|  | 16 | Q. Was this all in connection with your work |
|  | 17 | at Project Sentinel? |
|  | 18 | A. Yes, it was. |
|  | 19 | Q. All right.  Then I won't belabor the |
| 10:40 | 20 | admonitions, if you will, but I will go through a |
|  | 21 | couple of them real quickly with you. |
|  | 22 | Umm, first of all, it's important that you |
|  | 23 | do answer audibly like you're doing.  Even though |
|  | 24 | we're videotaping today, it's important that the |
| 10:40 | 25 | court reporter gets an accurate record, and she |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | A.   That it could be a very challenging case                |
|       | 2  | and that she was glad to think that Brancarts might          |
|       | 3  | be interested in it.                                         |
|       | 4  | Q.   Anything else did you discuss with her that             |
| 12:34 | 5  | you recall?                                                  |
|       | 6  | A.   Well, again, the facts of the case.                     |
|       | 7  | Q.   Right.  Other than just the facts that you              |
|       | 8  | have already provided us, is there anything else you         |
|       | 9  | remember about that conversation that either you             |
| 12:35 | 10 | said or that Ms. Kirkland said to you other than             |
|       | 11 | just the facts of the case and the comment she made          |
|       | 12 | that it would be a challenging case and she was glad         |
|       | 13 | that the Brancart firm was interested?                       |
|       | 14 | A.   The concept is a worthy one to pursue.                  |
| 12:35 | 15 | Q.   Did she explain what that "worthy one to                |
|       | 16 | pursue" --                                                   |
|       | 17 | A.   Those are my words.  Those aren't exactly               |
|       | 18 | her words.                                                   |
|       | 19 | Q.   All right.  Fair enough.  Umm, moving on to             |
| 12:35 | 20 | the 16th of May, 2013, you had conversations with            |
|       | 21 | staff regarding best way to generate a mailing list          |
|       | 22 | of rental property owners.                                   |
|       | 23 | A.   Yes.                                                    |
|       | 24 | Q.   What was your intent -- what was the                    |
| 12:35 | 25 | purpose of generating a mailing to rental property           |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | owners?  What was your reasoning behind doing that?              |
|       | 2  |     A.  To inform them that it could be an                       |
|       | 3  | insurance practice that we considered to be a fair               |
|       | 4  | housing violation, and if they have experience with              |
| 12:36 | 5  | it, for them to be able to recognize it as such and              |
|       | 6  | to contact us.                                                   |
|       | 7  |     Q.  And what was the geographical scope, if you              |
|       | 8  | will, of this intended mailing to rental property                |
|       | 9  | owners?  Was it Santa Clara County, was it the                   |
| 12:36 | 10 | entire region that Project Sentinel covered?                     |
|       | 11 |     A.  Well, we were certainly looking at what we               |
|       | 12 | were trying to figure out what options we had.  So               |
|       | 13 | certainly we wanted to focus on Santa Clara County,              |
|       | 14 | but our interest was as expansive as we could make               |
| 12:36 | 15 | it, too.                                                         |
|       | 16 |     Q.  And ultimately how expansive was it?                     |
|       | 17 |     A.  Let's see.                                               |
|       | 18 |     Q.  We can look at documents if you want to                  |
|       | 19 | later.  I just want to know if you knew roughly off              |
| 12:37 | 20 | the top of your read.                                            |
|       | 21 |     A.  I believe we, we mailed some literature to               |
|       | 22 | housing authorities well outside of Santa Clara                  |
|       | 23 | County.                                                          |
|       | 24 |     Q.  This is just -- it says rental property                  |
| 12:37 | 25 | owners.                                                          |

|  |  |  |
|---|---|---|
|  | 1 | A. Oh. And you're asking what we were |
|  | 2 | trying to -- rental property owners in Santa Clara |
|  | 3 | County. |
|  | 4 | Q. Okay. That was your focus? |
| 12:37 | 5 | A. That was a focus. |
|  | 6 | Q. Did you intend to include other rental |
|  | 7 | property owners outside of Santa Clara County? |
|  | 8 | A. We have -- we have an interest in doing |
|  | 9 | that, yes. |
| 12:37 | 10 | Q. But I mean at this stage -- was that your |
|  | 11 | intent with respect to this particular mailing to |
|  | 12 | rental property owners, was your focus on getting |
|  | 13 | out the mailings to rental property owners within |
|  | 14 | Santa Clara County? |
| 12:37 | 15 | A. That was our first focus, yes. |
|  | 16 | Q. And do you know if that was actually |
|  | 17 | accomplished, that mailers were sent out to rental |
|  | 18 | property owners in Santa Clara County? |
|  | 19 | A. We had some mailing, yes. |
| 12:38 | 20 | Q. Were you able to obtain a list of all the |
|  | 21 | rental property owners in Santa Clara County? |
|  | 22 | A. No. |
|  | 23 | Q. And did you obtain a partial list? |
|  | 24 | A. We obtained a list of some. |
| 12:38 | 25 | Q. And where did you obtain that list from? |

|  |  |  |
|---|---|---|
|  | 1 | A. City of Santa Clara. |
|  | 2 | Q. So would these have been rental -- the list |
|  | 3 | you obtained, was that a list of the rental property |
|  | 4 | owners in the city of Santa Clara? |
| 12:38 | 5 | A. Yes. |
|  | 6 | Q. As opposed to the city of San Jose or |
|  | 7 | Gilroy or some other place. |
|  | 8 | A. That's correct. |
|  | 9 | Q. Did you ever obtain a list of additional |
| 12:38 | 10 | landlords, rental property owners in which to send |
|  | 11 | flyers to? |
|  | 12 | A. I'm not sure if we received any other list. |
|  | 13 | Q. So as far as you recall sitting here today, |
|  | 14 | that if there were any -- the rent -- the flyers |
| 12:38 | 15 | that were sent to rental property owners would have |
|  | 16 | been limited to the city of Santa Clara? |
|  | 17 | A. And I also would want to look through some |
|  | 18 | of the documents to see if there is an indication of |
|  | 19 | others. |
| 12:39 | 20 | Q. I understand. I just mean as you're |
|  | 21 | sitting here today right now. |
|  | 22 | A. Yeah. |
|  | 23 | Q. Okay. I don't want to belabor this, but if |
|  | 24 | you look at May 17 and May 21. |
| 12:39 | 25 | A. Uh-huh. |

| | | |
|---|---|---|
| | 1 | Q.  There's contacted Jeff Pedersen at the City |
| | 2 | of Santa Clara, then sent request to Los Gatos, |
| | 3 | Mountain View, San Jose. |
| | 4 | Did you ever receive mailing lists?  Does |
| 12:39 | 5 | this refresh your recollection at all? |
| | 6 | A.  Well, I do remember the mailing list from |
| | 7 | Santa Clara City very clearly. |
| | 8 | Q.  Okay, but the other names don't -- |
| | 9 | A.  Well, I remember asking, soliciting the |
| 12:39 | 10 | list from the others, from Mountain View and from |
| | 11 | Los Gatos.  And I do see here an entry saying |
| | 12 | mailing list -- obtained mailing list and it |
| | 13 | includes Los Gatos, so we may have mailed some to |
| | 14 | property owners in Los Gatos. |
| 12:40 | 15 | Q.  Let's mark one more quickly, and then we |
| | 16 | can break for lunch. |
| | 17 | (Off the record discussion.) |
| | 18 | (Exhibit 173 was marked for |
| | 19 | identification.) |
| 12:40 | 20 | BY MR. COOPER: |
| | 21 | Q.  We have marked as Exhibit 173 a document |
| | 22 | bearing of the Bate number PS 00342.  Handwritten |
| | 23 | notations at the top, looks like it says "Travelers |
| | 24 | Insurance." |
| 12:40 | 25 | Do you recognize 173? |

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | A.  Yes.                                                 |
|       | 2  | Q.  Is this your handwriting?                            |
|       | 3  | A.  Yes, it is.                                          |
|       | 4  | Q.  Do you remember when you first took                  |
| 12:40 | 5  | these -- well, let's back it up a little bit.            |
|       | 6  | At the upper half of the page, if you will,              |
|       | 7  | there's some handwritten notations but there's no        |
|       | 8  | date.  And then there's a date.  It looks like it        |
|       | 9  | says December 12.  12/12/12.  December 12, 2012 and      |
| 12:41 | 10 | then December 13, 2012.  Do you know the date that       |
|       | 11 | the upper portion was written?                           |
|       | 12 | A.  No.                                                  |
|       | 13 | Q.  Would that have been December 7?                     |
|       | 14 | A.  Umm, you know, I really don't know.  I               |
| 12:41 | 15 | can't tell you exactly.                                  |
|       | 16 | Q.  If you could -- the upper portion, was this          |
|       | 17 | written by you during a conversation you had with        |
|       | 18 | Mr. and Mrs. Jones?                                      |
|       | 19 | A.  Umm, I probably wrote these words on this            |
| 12:41 | 20 | piece of paper afterwards.  But -- because it's more     |
|       | 21 | legible.                                                 |
|       | 22 | Q.  Okay.                                                |
|       | 23 | A.  But shortly after.  And I am not sure about          |
|       | 24 | the dates.                                               |
| 12:42 | 25 | Q.  Okay.  Was your main -- your primary                 |

|  |  |  |
|---|---|---|
|  | 1 | contact, if you will, during this period of late |
|  | 2 | 2012, early 2013, with the Joneses, was it |
|  | 3 | Mrs. Jones as opposed to Mr. Jones? |
|  | 4 | A.  I only talked to Mrs. Jones. |
| 12:42 | 5 | Q.  Okay. |
|  | 6 | THE REPORTER:  174. |
|  | 7 | (Exhibit 174 was marked for |
|  | 8 | identification.) |
|  | 9 | BY MR. COOPER: |
| 12:43 | 10 | Q.  Marked as Exhibit 174 a document bearing |
|  | 11 | the Bate numbers PS 004 through 7.  I would like you |
|  | 12 | to take a look at Exhibit 174 and tell me if you |
|  | 13 | recognize this document. |
|  | 14 | A.  I do recognize it. |
| 12:43 | 15 | Q.  Okay.  What is this document? |
|  | 16 | A.  It's a fax from Mrs. Jones to me regarding |
|  | 17 | her policy. |
|  | 18 | Q.  Okay.  And she's attached some documents |
|  | 19 | from Travelers on the last three pages -- |
| 12:43 | 20 | A.  Yes. |
|  | 21 | Q.  -- of this fax? |
|  | 22 | A.  Yes. |
|  | 23 | Q.  And is any of this your handwriting? |
|  | 24 | A.  No.  None of it is my handwriting. |
| 12:43 | 25 | Q.  And it looks like this fax was sent to you |

```
         1   on December 14, 2012.
         2       A.   Yes.
         3            MR. COOPER:  All right.  This is probably a
         4   good time to take a break.
12:44    5            MS. CRISTOL-DEMAN:  Okay.
         6            MR. COOPER:  Now that your sandwiches have
         7   been sitting there.
         8            THE VIDEOGRAPHER:  This is the end of tape
         9   number one.  The time is 12:44.  We are going off
12:44   10   the record.
        11            (Lunch recess was taken from
        12            12:44 p.m. to 1:33 p.m.)
        13
        14
        15
        16
        17
        18
        19
        20
        21
        22
        23
        24
        25
```

```
 1              ::: DECLARATION OF WITNESS :::

 2           I hereby declare I am the deponent in the
      within matter; that I have read the foregoing
 3    deposition and know the contents thereof, and I
      declare that the same is true of my knowledge except
 4    as to the matters which are therein stated upon my
      information or belief, and as to those matters, I
 5    believe it to be true.
             I declare under the penalties of perjury of
 6    the State of California that the foregoing is true
      and correct.
 7
             Executed this _____ day of
 8    _____, 201__, at
      _____, _____.
 9            (City)                  (State)

10
                     _____
11                   ANN MARQUART

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  ::: CERTIFICATE OF REPORTER :::

2

3　　　　I, SHELLEY M. SAILOR, a Certified Shorthand Reporter, holding a valid and current license issued

4  by the State of California, CSR No. 10254, duly authorized to administer oaths, do hereby certify:

5　　　　That the witness in the foregoing deposition was by me duly sworn to testify the truth

6  in the within-entitled cause; that said deposition was taken at the time and place therein cited; that

7  testimony of said witness was reported by me and thereafter transcribed under my direction into

8  typewriting; that the foregoing is a complete and accurate record of said testimony; and that the

9  witness was given an opportunity to read and correct said deposition and to subscribe the same.

10　　　　Should the signature of the witness not be affixed to the deposition, the witness shall not

11  have availed herself of the opportunity to sign or the signature has been waived.

12　　　　I further certify that I am not of counsel nor attorney for any of the parties in the foregoing

13  deposition and caption named nor in any way interested in the outcome of the cause named in said

14  caption.

15　　　Reading and Signing was REQUESTED.

16

17　　　DATED:  July 30, 2014

18

19

20  *Shelley M. Sailor* (signature)

21

22　　　SHELLEY M. SAILOR
　　　California CSR No. 10254

23

24

25