ROBERT M. PETERSON [Bar No.: 10084; rpeterson@ccplaw.com]
MICHAEL C. COOPER [Bar No.: 114729; mcooper@ccplaw.com]
MELLISSA A. DUBBS [Bar No.: 163650; mdubbs@ccplaw.com]
CARLSON, CALLADINE & PETERSON
353 Sacramento Street, 16th Floor
San Francisco, CA 94111
Telephone:     (415) 391-3911
Facsimile:     (415) 391-3898


PAUL C. CURNIN [pro hac vice; pcurnin@stblaw.com]
ANDREW T. FRANKEL [pro hac vice; afrankel@stblaw.com]
MATTHEW T. O'CONNOR [pro hac vice; moconnor@stblaw.com]
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave
New York, NY 10025
Telephone: (212) 455-2000
Facsimile:  (212) 455-2502

Attorneys for Defendant TRAVELERS CASUALTY
INSURANCE COMPANY OF AMERICA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LINCOLN JONES, JR. and MUYESSER NILE JONES, individually and as trustee of the Lincoln and M. Nile Jones Revocable Trust; and PROJECT SENTINEL, INC.<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | CASE NO.: CV 13-02390<br><br>**REPLY BRIEF OF TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA IN SUPPORT OF TRAVELERS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Lucy H. Koh<br><br>Hearing Date:  May 7, 2015<br>Hearing Time:  1:30 p.m.<br>Courtroom:      8<br><br>Filed concurrently herewith: Declaration of Andrew T. Frankel, Declaration of Brian T. Kearney<br><br>**ORAL ARGUMENT REQUESTED** |

1

## TABLE OF CONTENTS

2

**Page**

3  I.      INTRODUCTION.................................................................................................... 1

4  II.     THE UNDISPUTED FACTS.................................................................................. 2

5  III.    ARGUMENT ......................................................................................................... 3

6        A.   THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT
7             REGARDING DISPARATE TREATMENT..................................................3

8             1.    Plaintiffs' Purported "Circumstantial Evidence" Does Not Create any
                    Material Issue of Disputed Fact ...................................................... 5

9                  a)    Travelers' Emails ................................................................6

10                 b)    Assertions About Discrimination by the "American Public" or
11                       the "Insurance Industry"...................................................8

12                 c)    Plaintiffs' Disagreements with the Underwriting Guidelines ...........8

13        B.   THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT
             REGARDING INTERFERENCE .....................................................................11

14        C.   THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT
15             REGARDING DISPARATE IMPACT..............................................................13

16             1.    Even If Plaintiffs Had Made Out a *Prima Facie* Case of Disparate
                    Impact on a Protected Class, Travelers Has a Complete Business
17                  Necessity Defense ..................................................................... 17

18             2.    Plaintiffs' Claims Are Barred Under the McCarran-Ferguson Act............. 18

19  IV.    MOTION TO STRIKE PLAINTIFFS' REBUTTAL EXPERT REPORTS ...................... 19

20  V.     CONCLUSION ....................................................................................................... 20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3

*Am. Fed. of State, Cnty., & Mun. Emps. v. State of Washington*,
4
  770 F.2d 1401 (9th Cir. 1985) .................................................................. 4

5
*Am. Ins. Ass'n v. United States Dep't of Hous. & Urban Dev.*,
  No. CV 13-00966 (RJL), 2014 WL 5802283 (D.D.C. Nov. 7, 2014) .................... 18

6
*Artisan/American Corp. v. City of Alvin, Tex.*,
7
  588 F.3d 291 (5th Cir. 2009) .................................................................. 16

8
*Baldwin Graphics Sys., Inc. v. Siebert, Inc.*,
  No. 03-CV-7713, 2005 WL 1300763 (N.D. Ill. Feb. 22, 2005) ........................... 20

9
*Becka v. APCOA/Standard Parking*,
10
  146 F. Supp. 2d 1109 (C.D. Cal. 2001) ....................................................... 7

11
*Bezi v. Camacho*,
  No. CV SA11-0677-MMM (DTB), 2014 WL 2215911 (C.D. Cal. May 23,
12
  2014) ................................................................................................. 11

13
*Boykin v. Gray*,
  986 F. Supp. 2d 14 (D.D.C. 2013) ............................................................. 17

14
*Brown v. City of Tucson*,
15
  336 F.3d 1181 (9th Cir. 2003) ............................................................. 11, 12

16
*Budnick v. Town of Carefree*,
  518 F.3d 1109 (9th Cir. 2008) .................................................................. 3

17
*Burrell v. County of Santa Clara*,
18
  No. 11-CV-04569-LHK, 2013 WL 2156374 (N.D. Cal. May 17, 2013) ................. 7

19
*City & County of San Francisco v. Fair Emp't & Hous. Comm'n*,
  191 Cal. App. 3d 976 (Ct. App. 1987) ........................................................ 13

20
*City of Joliet v. Mid-City Nat'l Bank of Chicago*,
21
  No. 05 CV 6746, 2014 WL 4667254 (N.D. Ill. Sept. 17, 2014) .......................... 17

22
*Costa v. Desert Palace, Inc.*,
  299 F.3d 838 (9th Cir. 2002) (en banc) ........................................................ 4

23
*Darensburg v. Metro. Transp. Comm'n*,
24
  611 F. Supp. 2d 995 (N.D. Cal. 2009) ........................................................ 13

25
*Darensburg v. Metro. Transp. Comm'n*,
  636 F.3d 511 (9th Cir. 2011) .................................................................. 16

26
*Daubert v. Merrell Dow Pharms.*,
27
  509 U.S. 579 (1993) ............................................................................. 20

28
*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*,
  642 F.3d 728 (9th Cir. 2011) .................................................................... 4

*EEOC v. Aramark Corp.*,
    208 F.3d 266 (D.C. Cir. 2000) ................................................................................................. 9

*EEOC v. Boeing*,
    577 F.3d 1044 (9th Cir. 2009) ................................................................................................. 3

*Egan v. Schmock*,
    93 F. Supp. 2d 1090 (N.D. Cal. 2000) ................................................................................. 13

*Gamble v. City of Escondido*,
    104 F.3d 300 (9th Cir. 1997) ................................................................................................. 14

*Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations
    Comm'n*,
    508 F.3d 366 (6th Cir. 2007) ................................................................................................. 18

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ................................................................................................. 20

*Harris v. Capital Growth Investors XIV*,
    805 P.2d 873 (Cal. 1991) ...................................................................................................... 13

*Harris v. City of Fresno*,
    625 F. Supp. 2d 983 (E.D. Cal. 2009) .................................................................................... 7

*Harris v. City of Santa Monica*,
    294 P.3d 49 (Cal. 2013) .......................................................................................................... 7

*Harris v. Itzhaki*,
    183 F.3d 1043 (9th Cir. 1999) ............................................................................................... 14

*Huntington Branch, NAACP v. Town of Huntington*,
    844 F.2d 926 (2d Cir. 1988) ................................................................................................. 16

*In re High-Tech Emp. Antitrust Litig.*,
    No.: 11-CV-02509–LHK, 2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) ............................... 20

*Inclusive Cmtys. Project v. Tex. Dep't of Hou. & Comty. Affairs*,
    No. 13-1371 (U.S. 2015) ...................................................................................................... 13

*Keith v. Volpe*,
    858 F.2d 467 (9th Cir. 1988) ................................................................................................. 14

*Leonard F. v. Isr. Discount Bank of N.Y.*,
    199 F.3d 99 (2d Cir. 1999) ...................................................................................................... 9

*Lincoln v. Reinhart County*,
    482 F.3d 1225, 1229–30 (10th Cir. 2007) .............................................................................. 4

*Magner v. Gallagher*,
    619 F.3d 823 (8th Cir. 2010) ................................................................................................. 12

*Merrick v. Famers Ins. Grp.*,
    892 F.2d 1434 (9th Cir. 1990) ................................................................................................. 7

*Mondero v. Salt River Project*,
  400 F.3d 1207 (9th Cir. 2005) ........................................................................... 7

*NAACP v. Am. Family Mut. Ins. Co.*,
  978 F.2d 287 (7th Cir. 1992) ............................................................................ 14

*Nelms v. Wellington Way Apts., LLC*,
  No. 2:08-cv-1038, 2011 WL 1237882 (S.D. Ohio March 28, 2011) ................................ 3, 12

*Nevels v. W. World Ins. Co.*,
  359 F. Supp. 2d 1110 (W.D. Wash. 2004) ....................................................... 12, 14

*Nguyen v. McHugh*,
  No. 13-cv-01847-LHK, 2014 WL 4182694 (N.D. Cal. Aug. 22, 2014) ................................. 3

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*,
  854 F.2d 1538 (9th Cir. 1988) .......................................................................... 19

*Oracle v. Google*,
  No. C 10–03561 WHA, 2011 WL 5572835 (N.D. Cal. Nov. 15, 2011) ................................ 20

*Orr v. Bank of Am., NT & SA*,
  285 F.3d 764 (9th Cir. 2002) ........................................................................... 19

*Pac. Shores Props., LLC v. City of Newport Beach*,
  730 F.3d 1142 (9th Cir. 2013) ...................................................................... 5, 13

*Palmer v. United States*,
  794 F.2d 534 (9th Cir. 1986) ........................................................................... 14

*Pfaff v. U.S. Dep't of Hous. & Urb. Dev.*,
  88 F.3d 739 (9th Cir. 1996) ............................................................................ 14

*Price Waterhouse v. Hopkins*,
  490 U.S. 228 (1989) ...................................................................................... 7

*Rose v. Wells Fargo & Co.*,
  902 F.2d 1417 (9th Cir. 1990) .......................................................................... 13

*Rouse v. Berry*,
  848 F. Supp. 2d 4 (D.D.C. 2012) ........................................................................ 9

*Sec'y v. Carter*,
  No. HUDALJ 03-90-0058-1, 1992 WL 406520 (H.U.D. A.L.J. May 1, 1992) ...................... 12

*Sierra Club v. Cal. Coastal Comm'n*,
  111 P.3d 294 (Cal. 2005) ............................................................................... 19

*Taliaferro v. Voth*,
  774 F. Supp. 1326 (D. Kan. 1991) ....................................................................... 3

*Thomas v. Eastman Kodak Co.*,
  183 F.3d 38 (1st Cir. 1999) ............................................................................. 4

*Tuggles v. City of Antioch*,

No. C08-01914 JCS (N.D. Cal. Oct. 2, 2009) ........................................................ 11

*Wai v. Allstate Ins. Co.*,
    75 F. Supp. 2d 1 (D.D.C. 1999) ..................................................................... 14

*Walker v. City of Lakewood*,
    272 F.3d 1114 (9th Cir. 2001) ....................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................................... 7

*Watson v. Fort Worth Bank & Trust*,
    487 U.S. 977 (1988) ................................................................................. 8, 13

*Ybarra v. Town of Los Altos Hills*,
    503 F.2d 250 (9th Cir. 1974) ........................................................................... 4

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ....................................................................... 20

*Young v. United Parcel Serv., Inc.*,
    __ S. Ct. __, 2015 WL 1310745 (U.S. 2015) ................................................. 4

## STATUTES

42 U.S.C. § 3617 ........................................................................................... 14

Cal. Gov't Code § 12993(c) ........................................................................... 22

Cal. Ins. Code § 679.72 ................................................................................. 21

Fed. R. Civ. P. 37 .......................................................................................... 24

Fed. R. Civ. P. 56 .......................................................................................... 22

## REGULATIONS

24 C.F.R. § 100.400 ....................................................................................... 13

24 C.F.R. § 100.70 ......................................................................................... 17

1    **I.      INTRODUCTION**

2              Q.  Do you know anybody in the State of California that was denied
               housing because of [ ] Travelers' underwriting guidelines?
3              A.  No.

4    Testimony of Prof. Calvin P. Bradford, Expert for Plaintiffs.  Reply Ex. AG (Bradford Dep.) at

5    108:10–13.

6              Plaintiffs' opposition brief does not raise any material issues of fact sufficient to defeat

7    summary judgment.  Instead, the opposition relies on misleading characterizations of the record,

8    mischaracterizations of legal precedent, baseless and inflammatory accusations of "redlining," and

9    a review of alleged discrimination decades ago by unnamed third parties.  These tactics say

10   nothing about Travelers or Apartment Pac, but they say a great deal about the weakness of

11   Plaintiffs' case and their attempt to create the illusion of disputed issues of fact.

12             Travelers is entitled to summary judgment.  *First*, it is undisputed that a claim of

13   discriminatory treatment requires the plaintiff to prove *intentional* discrimination on the basis of

14   race, color, religion, sex, familial status or national origin.  Plaintiffs make no attempt to make out

15   a *prima facie* case of intentional discrimination under the *McDonnell Douglas* framework, and

16   have no direct evidence of intentional discrimination.  Opp. at 9, ECF No. 172-3.  Their purported

17   circumstantial evidence is addressed below—none of it reflects the "*specific* and *substantial*"

18   evidence required to defeat summary judgment on Plaintiffs' claim of intentional discrimination.

19             *Second*, Plaintiffs' interference claim also requires proof of *intentional* discrimination

20   against a protected class.  Plaintiffs have no such evidence.

21             *Third*, Plaintiffs' disparate impact claim fails because they have not proffered *any* evidence

22   of impact or causation.  The only "evidence" provided by Plaintiff is a statistical analysis

23   purporting to correlate Section 8 tenants and members of protected classes.  Even if that

24   correlation were valid, it is not enough to show any disparate impact.  Plaintiffs' own expert

25   concedes there is no evidence that any housing was ever made unavailable to any Section 8 tenants

26   due to Travelers' underwriting guidelines or that any such housing would be unavailable in the

27   future.  The record is undisputed that the Joneses themselves did not withdraw from the Section 8

28   program, raise rents, or displace a single Section 8 tenant after the non-renewal of their Apartment

---

**Case No. 5:13-cv-02390-LHK (PSG)**
**TRAVELERS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  Pac policy.  Plaintiffs also fail to raise any material issue of fact that Travelers' business

2  justification for its underwriting guidelines were pretexts for discrimination, and they do not

3  dispute that there is no alternative policy or practice available to Travelers.

4  **II.     THE UNDISPUTED FACTS**

5          There are a small number of material facts necessary to support summary judgment, all of

6  which are undisputed.  Travelers' underwriting guidelines for Apartment Pac state that

7  "subsidized, public or government-funded complexes" are ineligible operations under that policy.

8  Kearney Decl. ¶ 12.  It is undisputed that this guideline is facially neutral—it does not make any

9  distinctions based on the race, color, religion, sex, familial status or national origin of applicants,

10  policyholders or their tenants.  It is also undisputed that Travelers does not ask for, know, or track

11  the race, color, religion, sex, familial status or national origin of Apartment Pac applicants,

12  policyholders or their tenants.  *See* Ex. A (M. Jones Dep.) at 129:16–131:20, 174:20–177:25

13  (explaining that Travelers and NIS employees did not ask about membership in a protected class

14  and were "professional" and not inappropriate).[1]  The vast majority of Apartment Pac policies are

15  quoted and bound by third-party agents using an entirely *automated* process that does not involve

16  any Travelers employee.  Declaration of Brian Kearney dated October 7, 2014, ECF No. 95-2,

17  ("Kearney Decl.") ¶ 4.

18          The only direct evidence of the intent of the underwriting guideline at issue is the

19  undisputed testimony of Travelers' Vice-President of Select Accounts Underwriting, Brian

20  Kearney.  Mr. Kearney, who was Travelers' 30(b)(6) witness, provided numerous bona fide

21  reasons for Travelers' underwriting guideline, none of which is based on "stereotypes" or

22  discrimination of any kind.  *See* Kearney Decl. ¶¶ 6–22.

23          The Joneses had ready access to insurance at all times and were never without insurance.

24  In fact, a Travelers affiliate offered insurance to the Joneses even after the non-renewal of their

25  Apartment Pac policy.  Ex. M (M. Jones Notes) at MJ01865.  Not one member of a protected class

26  or Section 8 tenant was displaced or impacted in any way when the Joneses' Apartment Pac policy

27  [1]     Exhibits identified by an unadorned "Ex." refer to exhibits attached to the Declaration of
28  Andrew T. Frankel in Support of Travelers Casualty Insurance Company of America's
Motion for Summary Judgment, dated February 5, 2015, ECF No. 155.

was non-renewed by Travelers, s*ee* Ex. A (M. Jones Dep.) at 105:5–11; *see also id*. at 74:22–23, 76:20–23, 79:13–22, 80:20–81:1; Ex. B (M. Jones Dep.) at 259:20–260:10, 261:10–15, a key fact Plaintiffs ignore.

## III.   ARGUMENT

### A.   There Is No Genuine Dispute as to Any Material Fact Regarding Disparate Treatment

Plaintiffs have not attempted to make a *prima facie* case of disparate treatment under *McDonnell Douglas*.  Opp. at 9.  Therefore, Plaintiffs must "produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the challenged decision."  *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008).  Proving a discriminatory treatment claim without the use of *McDonnell Douglas* burden-shifting is difficult and rare.  "[W]hen the plaintiff relies on circumstantial evidence, that evidence must be specific and substantial to defeat the [defendant's] motion for summary judgment." *Nguyen v. McHugh*, No. 13-cv-01847-LHK, 2014 WL 4182694, *17 (N.D. Cal. Aug. 22, 2014) (quoting *EEOC v. Boeing*, 577 F.3d 1044, 1049 (9th Cir. 2009)).

The undisputed evidence shows that Travelers did not even *know* the race, color, religion, sex, familial status or national origin of its applicants, its policyholders or their tenants, let alone make any decision *because* of that information.  The Joneses' policy was quoted and bound on an automated system without the direct involvement of any Travelers employees.  *See* Reply Ex. Z (Bennett Dep.) at 70:6–11, 82:14–25, 234:15–20.  This evidence precludes a finding of disparate treatment.  *See, e.g.*, *Nelms v. Wellington Way Apts., LLC*, No. 2:08-cv-1038, 2011 WL 1237882, at *15 (S.D. Ohio March 28, 2011) ("If the alleged discriminator had no knowledge of the plaintiff's race, then the plaintiff cannot demonstrate a discriminatory intent on the basis of race."), *aff'd in relevant part*, 513 F. App'x 541 (6th Cir. 2013); *Taliaferro v. Voth*, 774 F. Supp. 1326, 1336 (D. Kan. 1991) (finding no evidence "that defendants' conduct was racially motivated" where a defendant "did not know and had no reason to know or believe that [plaintiff] was an African American").

1    Plaintiffs' burden on summary judgment is not satisfied by calling into question Travelers'

2    business judgment.  The Ninth Circuit has recognized that it is insufficient as a matter of law to

3    show that a defendants' facially neutral business justification is "wrong, mistaken, or unwise."

4    *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011).  Plaintiffs

5    must offer specific and substantial evidence that Travelers' facially neutral policies are, in fact, a

6    *pretext* for actual and *intentional* discrimination.  They have not done so.

7    Nor can Plaintiffs meet their burden of proving discriminatory intent merely by showing a

8    correlation between economic status and protected classes.  *Ybarra v. Town of Los Altos Hills*, 503

9    F.2d 250, 253 (9th Cir. 1974) ("We agree that discrimination against the poor does not become

10   discrimination against an ethnic minority merely because there is a statistical correlation between

11   poverty and ethnic background.").[2]  Disparate treatment requires evidence of intentional

12   discrimination on the basis of race, color, religion, sex, familial status or national origin.[3]

13   Plaintiffs also have no Ninth Circuit authority for their argument that they can survive

14   summary judgment by showing Travelers employed "unthinking stereotypes and bias" even if it

15   did not "consciously intend" to discriminate.  Opp. at 10.  The Ninth Circuit has expressly held the

16   opposite:  "Disparate treatment claims require the plaintiff to prove that the [defendant] acted with

17   *conscious intent* to discriminate."  *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 854 (9th Cir. 2002)

18   (en banc) (emphasis added); *see also Am. Fed. of State, Cnty., & Mun. Emps. v. State of*

19   *Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985) ("The plaintiff must show the employer chose

20   the particular policy because of its effect on members of a protected class.") (citations omitted).[4]

---

2    *See also Lincoln v. Reinhart County*, 482 F.3d 1225, 1229–30 (10th Cir. 2007).

3    Plaintiffs argue that "the FHA protects persons who are injured by discriminatory housing
     practices, not just members of protected classes or tenants" and cite cases addressing the
     issue of *standing*.  Opp. at 8.  Regardless of whether Plaintiffs have standing, they are still
     required to prove that Travelers intentionally discriminated *against members of a protected
     class*, which their own expert concedes does not include landlords.  *See Young v. United
     Parcel Serv., Inc.*, __ S. Ct. __, 2015 WL 1310745, *12 (U.S. 2015) ("[D]isparate-
     treatment law normally permits an employer to implement policies that are not intended to
     harm members of a protected class, even if their implementation sometimes harms those
     members . . . .");  Reply Ex. AG (Bradford Dep.) at 80:22–81:1.

4    The First Circuit case, *Thomas v. Eastman Kodak*, is distinguishable.  183 F.3d 38 (1st Cir.
     1999).  *Thomas* was a *McDonnell Douglas* burden-shifting case where an employee
     claimed her supervisor gave her low scores because of her race, which in turn led to her
     termination when her employer laid off the employees with the lowest scores.  *Id.* at 45–

1    Nor does "proxy discrimination" apply here.  Plaintiffs' own caselaw explains that proxy

2    discrimination only applies when the proxy criteria are "so closely associated with the disfavored

3    group that discrimination on the basis of such criteria is, constructively, facial discrimination."

4    *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013).

5    This requires a showing that the criteria "are almost exclusively indicators of membership in the

6    disfavored group."  *Id*.  (giving the example that "discriminating against individuals with gray hair

7    is a proxy for age discrimination").  But even Plaintiffs' expert asserts that African-Americans, for

8    example, make up only 33.14% of Section 8 tenants in California and only 13.89% of Section 8

9    tenants in Santa Clara.  Ex. 1 to Declaration of Calvin P. Bradford ("Bradford Report") at 7, 18,

10   ECF No. 175-1.[5]  Thus Section 8 tenants and protected classes are not "so closely associated" such

11   that one is a "proxy" for the other.

### 1.    Plaintiffs' Purported "Circumstantial Evidence" Does Not Create any Material Issue of Disputed Fact

13   Without citation, Plaintiffs claim that "Travelers readily admits that it relies on

14   stereotyping or assumptions about landlords and their tenants."  Opp. at 10.  This is blatantly

15   untrue.  Mr. Kearney summarized the numerous, legitimate business reasons for the Apartment

16   Pac underwriting guidelines, including, *inter alia*, that the policy is designed to be a highly

17   automated, low-risk, "low touch" product; that subsidized, public or government funded

18   complexes present unknown, complex, specialized or higher-risk exposures that are not consistent

19   with the Apartment Pac product or its pricing; and that Travelers' Select Accounts lacks the

20   expertise necessary to underwrite and price that market.  Kearney Decl. ¶¶ 9, 11.[6]  Travelers'

---

46.  *Thomas* held, based on the evidence in that case, that "it is reasonable to infer that race played a determinative role in the evaluation process" even though it was unclear at the summary judgment stage whether "race was an issue . . . [because of] some form of conscious animus or less conscious bias."  *Id*. at 64–65.  Plaintiffs here have no evidence of "conscious animus" or "less conscious bias."

[5]  According to Plaintiffs' expert, the only protected class that constitutes more than 50% of Section 8 tenants is the class of "female-headed households."  Bradford Report at 18.  But, even crediting Plaintiffs' expert, a substantial minority of Section 8 tenants are *not* "female-headed households" (26.69% of in California and 32.6% in Santa Clara).  *Id.*

[6]  Mr. Kearney noted among other things that government regulations alter the financial relationship between the landlord and tenant and that these regulations could impact the ability of such landlords to maintain properties relative to other landlords.  *See* Kearney Decl. ¶¶ 16, 18.  It is also undisputed that the Section 8 program can interfere with a

1   expert Mr. Costigan has explained that properties with subsidized housing, including Section 8,

2   frequently experience higher losses than other forms of privately run housing.  Costigan Decl. Ex.

3   A ¶ 65.

4          The circumstantial evidence relied upon by Plaintiffs consists of (a) five out-of-context and

5   mischaracterized emails far removed from the alleged discriminatory decisions at issue, (b) policy

6   arguments that stereotyping used to exist and may still exist in the housing market and insurance

7   industry generally, and (c) Plaintiffs' *ipse dixit* disagreement with Travelers' underwriting

8   guidelines.

9                   **a)**       **Travelers' Emails**

10          Of the thousands of emails and other documents produced by Travelers in this action, and

11   more than ten depositions of present and former Travelers' employees, Plaintiffs rely on snippets

12   from five email exchanges.  None of these emails supports a claim of intentional discrimination,

13   which likely explains why Plaintiffs provide only *one* of these emails to the Court.  Travelers

14   attaches them and invites the Court's review.  None relate to the Jones account.  None mention

15   race, color, religion, or national origin.  None recommend a denial of insurance coverage.

- A 2010 email in which a Travelers employee stresses the importance of *not* relying on stereotypes:  "Being poor or disabled doesn't always mean somebody will be a bad tenant."  Reply Ex. T. Plaintiffs' insurance expert, Daniel Schwarcz, recognizes this as a "reasonable" email pushing back against the hypothetical risk of stereotyping.  *See* Reply Ex. AH (Schwarcz Dep.) at 206:17–207:1.

- A 2010 email in which a Travelers employee observes that properties with Section 8 tenants "tend to have a higher loss ratio than standard apartment complexes"—a fact Plaintiffs do not claim is untrue.  Reply Ex. U.

- A 2009 email in which an underwriter observes that "[a] lot of times the Section 8 recipient will be single Moms" but never suggests that any decision be made on this basis and recommends that the applicant be *approved*.  Reply Ex. V.

- A 2011 email concerning insurance for a Habitat for Humanity development that was partially government funded.  The underwriter says nothing about any protected class, and *approves* the insurance for the property at issue if a "standard ISO survey . . . comes back okay."  Reply Ex. W.

---

landlord's ability to collect market rent; indeed numerous governments have rejected attempts to mandate that landlords accept Section 8 tenants for this reason.  *See* Kearney Decl. ¶ 18; *see also* Reply Ex. AA (New York Governor's Veto Message).

- A 2013 email exchange in which a Travelers employee responds to a general inquiry regarding whether properties with 10% or less subsidized units are eligible based on individualized reviews without approval from a regional underwriting director. One employee states that rent subsidies "are generally in low income (stay away from) places" although "there may be exceptions to the rule." This email makes no mention of any protected class, has nothing to do with the Joneses, and was not sent in connection with any insurance application by anyone. Reply Ex. X.

Courts have long held that such stray remarks are *insufficient* to support a claim of discrimination, particularly when the remarks are (1) years removed from the alleged discriminatory act,[7] (2) made by an individual who is not involved in the decision at issue,[8] or (3) do not relate to the decision at issue.[9] Here, (1) four of the five emails were sent more than a year prior to the decision to non-renew the Joneses' policy, (2) none of the emails were sent by individuals responsible for setting Travelers' Apartment Pac underwriting guidelines and only one was sent by someone with any involvement with the Joneses' account (although his email had nothing to do with the Joneses' account), and (3) none relate to either the decision to non-renew the Joneses' policy or the decision to adopt the Apartment Pac underwriting guidelines. *See* Declaration of Brian T. Kearney in Support of Travelers' Reply ("Kearney Reply Decl.") ¶¶ 3–8.[10]

---

[7] *See Harris v. City of Fresno*, 625 F. Supp. 2d 983, 1003 (E.D. Cal. 2009) ("[T]here is no evidence whatsoever that Fey's isolated . . . comment was . . . made while Fey was considering Plaintiff for the position."); *Becka v. APCOA/Standard Parking*, 146 F. Supp. 2d 1109, 1115 (C.D. Cal. 2001) (holding that a three-year gap between stray remarks and adverse action "renders dubious any connection between" them), *aff'd*, 50 F. App'x 884 (9th Cir. 2002).

[8] *See Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) ("Stray remarks not acted upon or communicated to a decision maker are insufficient to establish pretext."); *Merrick v. Famers Ins. Grp.*, 892 F.2d 1434, 1438–39 (9th Cir. 1990) ("'[S]tray' remarks are insufficient to establish discrimination.").

[9] *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring in the judgment) ("Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard."); *Burrell v. County of Santa Clara*, No. 11-CV-04569-LHK, 2013 WL 2156374, at *21 (N.D. Cal. May 17, 2013) ("'[D]iscriminatory thoughts, beliefs, or stray remarks that are unconnected to employment decisionmaking' cannot alone support a disparate treatment claim under FEHA." (quoting *Harris v. City of Santa Monica*, 294 P.3d 49, 65 (Cal. 2013))).

[10] Plaintiffs suggest that there is something improper about the fact that Travelers gives some discretion to its employees to implement the Apartment Pac underwriting guidelines. Opp. at 13. That is not the law. Indeed, even the case Plaintiffs rely on for this point observes that giving discretion to lower-level employees is "a very common and presumptively reasonable way of doing business—one that we have said 'should itself raise no inference of discriminatory conduct.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2554 (2011) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990 (1988)). The cases

1

2

**b)       Assertions About Discrimination by the "American Public" or the "Insurance Industry"**

3       Plaintiffs repeatedly assert that stereotypes were "in existence in 1968" and "persist

4  today."  Opp. at 11.  Similarly, Plaintiffs accuse unidentified members of "the insurance industry"

5  of committing "historic" acts of discrimination—such as "redlining"—against unspecified people

6  in unspecified places at an indeterminate time.  Opp. at 18–19 & n.14.  But Plaintiffs offer ***no***

7  evidence having anything whatsoever to do with the Apartment Pac underwriting guidelines,

8  Travelers, or the Joneses, and these accusations thus cannot create a material issue of fact.  The

9  innuendo that Travelers is perpetuating historical discrimination also fails in light of Plaintiffs'

10  agreement that Travelers may appropriately exclude many forms of subsidized, government

11  funded or public housing complexes other than Section 8, s*ee* Reply Ex. S (Kearney Dep.) at

12  173:21–174:9 ("[T]here is no dispute on the Plaintiff's side that if you're dealing with public

13  housing . . . that's fine.") and Reply Ex. AB (Bishop Dep.) at 89:21–91:4 (project-based Section 8

14  housing not at issue), and Plaintiffs acknowledge that Travelers employed a "Fair Access Policy"

15  that "required underwriters to discard 'stereotypical beliefs or assumptions about whether various

16  types of applicants and properties are insurable.'"  Opp. at 19–20.[11]

17       **c)       Plaintiffs' Disagreements with the Underwriting Guidelines**

18       Plaintiffs offer a number of arguments that they say undercut the need for the Apartment

19  Pac underwriting guidelines.  Plaintiffs' disagreement with the business need and underwriting

20  judgments of Travelers is not sufficient to support a claim of disparate treatment.

21       Plaintiffs repeatedly claim that "Travelers adopted its no Section 8 rule without study, data

22  or analysis," citing the deposition of Mr. Kearney.  Opp. at 10.  First, insurers are not required to

23  conduct a detailed study of a market as a prerequisite for *not* participating in that market.  This

24  makes no sense (as explained in Professor Harrington's and Mr. Costigan's reports, *see* Harrington

25       Plaintiffs cite concerning a failure to supervise/train, Opp. at 13 n.10, are also inapposite.
      Here, there are no allegations, let alone proof, that Travelers failed to adequately supervise
26      its employees.

27  [11]   In a gross mischaracterization of the record, Plaintiffs assert that "Travelers employees
      repeatedly expressed concerns about this policy," citing two documents attached to the
28      Brancart Declaration (Exs. I, T).  Neither of these documents, however, has *anything* to do
      with the Fair Access Policy or the Joneses' account.

Decl. Ex. A. ¶¶ 21–24; Costigan Decl. Ex. A ¶ 22), and, in any event, is not the law.  *See, e.g.*, *Rouse v. Berry*, 848 F. Supp. 2d 4, 8 (D.D.C. 2012) ("[D]iscriminatory intent . . . 'cannot mean merely a lack of actuarial justification.'" (quoting *EEOC v. Aramark Corp., Inc.*, 208 F.3d 266, 271 (D.C. Cir. 2000)).[12]  Moreover, Mr. Kearney said no such thing.  He said only that he could not testify to the thought process of long-departed employees involved in original underwriting decisions years earlier.  Reply Ex. S (Kearney Dep.) at 155:19–157:6.  Mr. Kearney did testify at length, however, about Travelers' analysis and factual basis for an underwriting distinction between landlords that own subsidized, public and government funded properties (including Section 8) and purely private landlords.[13]  Reply Ex. S (Kearney Dep.) at 155:6–156:3, 159:12–181:15.

Plaintiffs argue that there is no specialty market for private landlords who rent to Section 8 tenants.  *See* Opp. at 13–14.[14]  Plaintiffs are playing word games.  While there may not be an insurance market that consists *exclusively of* private landlords who rent to Section 8 tenants, there is clearly a specialty market that *includes* private landlords who rent to Section 8 tenants. Similarly, Plaintiffs disingenuously assert that "Travelers admits that it is 'unaware' of any specialized carrier handling private housing with Section 8 tenants," again citing Mr. Kearney.  *Id.* at 13.  Mr. Kearney actually testified as follows:  "So as you've narrowly asked the question around private housing market with Section 8 tenants, I'm not aware of a specialized carrier that is

---

[12]  *See also, e.g.*, *Leonard F. v. Isr. Discount Bank of N.Y.*, 199 F.3d 99, 105 n.4 (2d Cir. 1999) ("We are not the first federal court of appeals to observe that construing Section 501(c) to require insurers to base their underwriting decisions on 'sound actuarial principles' in all cases involving persons with disabilities would dramatically expand the federal role in the regulation of insurance and thereby 'disrupt . . . the current regulatory structure . . . of the insurance industry.'").

[13]  Plaintiffs' characterization of the underwriting guideline as a "no Section 8 rule" is itself misleading.  As indicated in an earlier declaration by Mr. Kearney, Travelers' underwriting guideline applies to all subsidized, public and government funded properties and Travelers allows exceptions to be made to its underwriting guideline on an individualized basis. Kearney Decl. ¶¶ 8–10, ECF No. 95-2.  Plaintiffs are not challenging the application of the guideline to other forms of subsidized or public housing.  *See* Reply Ex. S (Kearney Dep.) at 173:21–174:9; Reply Ex. AB (Bishop Dep.) at 89:21–91:4.

[14]  As indicated in the Kearney and Costigan declarations, the existence of a specialty market demonstrates that the risk involved is one typically involving unique, higher and/or more complex exposures from an insurance underwriting perspective.  *See* Costigan Decl. Ex. A ¶¶ 17, 23, 46, 50; Kearney Decl. ¶¶ 7, 14, 18.

---

1   handling that narrow market.  *I am aware that there are specialized carriers looking at the*

2   *subsidized housing market, and I believe that's inclusive of Section 8 as well*."  Reply Ex. S

3   (Kearney Dep.) at 191:13–192:11 (emphasis added).[15]  Travelers also submitted evidence from an

4   underwriting expert with decades of experience, who confirmed the existence of a specialized

5   market.  *See* Costigan Decl. Ex. A ¶ 23.  That evidence is unrefuted.  It is also undisputed that a

6   Travelers affiliate participates in this very market, along with many other insurance companies,

7   and provided a quote to the Joneses when they were seeking replacement coverage.  *See* Ex. M

8   (M. Jones Notes) at MJ01865.[16]

9       Plaintiffs argue it is implausible that apartments with one or more Section 8 tenants create

10   unique risks.  *See* Opp. at 14–16.  This assertion is refuted by Plaintiffs' own expert, who admits

11   that there are "potentially *plausible* reasons to believe that lessors who rent to Section 8 tenants

12   may be higher risk with respect to a commercial multi-peril policy."  Schwarcz Decl. Ex. 1 ¶ 21,

13   ECF No. 177-1 (emphasis added).  The evidence offered in support of Travelers' motion on this

14   point, on the other hand, is substantial and unrefuted.  *See, e.g.*, Kearney Decl. ¶¶ 11, 13–18;

15   Costigan Decl. Ex. A ¶¶ 17, 25–26, 46–47, 49, 55–58, 65; Painter Decl. Ex. A ¶¶ 34–38,

16   Harrington Decl. Ex. A ¶¶ 10(c), 18.

17       Plaintiffs assert it is implausible that Travelers has a business justification for

18   distinguishing between landlords with Section 8 tenants and those without.  Mr. Kearney testified

19   that Travelers Select Accounts made a business decision to sell a highly automated, high volume,

20   "low touch" product rather than a product that would require significantly more individualized

21   assessments of the underwriting risks, Kearney Decl. ¶ 15, a judgment supported by Mr.

22   Costigan's experience in the insurance market for properties participating in Section 8.  *See, e.g.*,

23   Costigan Decl. Ex. A ¶¶ 54–58, 65.  Here again, Plaintiffs have submitted absolutely no evidence

[15]   These companies include, for example, Philadelphia Insurance Company, Housing Enterprise Insurance Company (part of the HAI Group), The Distinguished Program Group, and Wells Fargo (as a broker).  Reply Ex. S (Kearney Dep.) at 190:25–191:7; Costigan Decl. Ex. A ¶ 50.

[16]   The 2004 DOI report that Plaintiffs' cite confirms that "a market does exist" and that there are insurers "willing to offer new business to . . . entities providing subsidized low and moderate income rental housing."  Ex. Q, at DOI000656.

1  showing that Travelers' guidelines are a pretext for intentional discrimination.

2      Lastly, Plaintiffs resort to *ad hominem* attacks on Travelers.  Plaintiffs assert that Travelers

3  "misled" the California DOI in 2004 because Travelers said that it did not ask applicants to

4  identify if the property is subsidized by federal, state or local government funding.  Opp. at 20

5  n.17 (citing Brancart Decl. Ex. N).  However, Travelers' answer was correct.  Plaintiffs' purported

6  "evidence" to the contrary is a 2004 email that is entirely consistent with Travelers' DOI survey

7  response.  *See* Brancart Decl. Ex. O (███████████████████████████████████

8  ███████████████████████████████████████).  Plaintiffs also claim that

9  Travelers "misled" the DOI because it responded to a consumer-initiated inquiry about why

10 insurance was not issued in a particular instance with the truthful explanation that the agent never

11 finalized the submission.  Opp. at 20 n.17 (citing Brancart Decl. Ex. 11).  Plaintiffs have no

12 evidence that Travelers' response was inaccurate in any way.  Moreover, Plaintiffs do not even

13 attempt to connect these accusations to any claim in this action.

**B.      There Is No Genuine Dispute as to Any Material Fact Regarding Interference**

15     Plaintiffs contend that "proof of a § 3617 violation does not necessarily require evidence of

16 an intent to discriminate."  Opp. at 21 (emphasis omitted).  Plaintiffs misstate the law.  *See Bezi v.*

17 *Camacho*, No. CV SA11-0677-MMM (DTB), 2014 WL 2215911, at *9 (C.D. Cal. May 23, 2014)

18 ("Discriminatory intent is the pivotal element in this [Section 3617] case." (internal quotation

19 omitted)); *Tuggles v. City of Antioch*, No. C08-01914 JCS, slip op. at 30 (N.D. Cal. Oct. 2, 2009)

20 ("[I]n order to state a claim for retaliation or interference with protected FHA rights, a Plaintiff

21 must provide evidence of intent to discriminate.").  Plaintiffs rely on two cases.  *Walker v. City of*

22 *Lakewood* sustained a § 3617 claim because the plaintiffs alleged that the defendant's actions were

23 "*designed to coerce and intimidate* the [plaintiffs] into changing or ceasing their activities" *and*

24 had evidence showing their "protected activities were *the real reason* for the [defendant's]

25 actions."  272 F.3d 1114, 1128, 1130–31 (9th Cir. 2001) (emphasis added).  *Walker* only confirms

26 that evidence of intent is essential.  *Id. Brown v. City of Tucson* states that § 3617 claims are

27 evaluated "using 'the familiar burden-shifting analysis established by the Supreme Court in

28

1    *McDonnell Douglas Corp. v. Green*,'" which is a framework to prove intentional discrimination.

2    336 F.3d 1181, 1191–92 (9th Cir. 2003).

3         Even though Plaintiffs admit that they cannot make out a *prima facie* claim of

4    discriminatory treatment, they claim they can make out a *prima facie* case for § 3617 interference

5    by showing that Plaintiffs "(1) w[ere] engaged in protected activity, (2) suffered an adverse action,

6    and (3) there was a causal link between the two." Opp. at 21.  Courts have held that renting to

7    protected classes is not considered protected activity within the meaning of § 3617.  *See, e.g.*,

8    *Gallagher v. Magner*, 619 F.3d 823, 838–39 (8th Cir. 2010) ("Appellants were not exercising a

9    right under the FHA by leasing to racial minorities.  Were we to adopt Appellants' expansive view

10   of § 3617, every disparate treatment claim would automatically become a retaliation claim.").

11   Second, Plaintiffs have provided no facts showing either that any of their tenants were members of

12   protected classes or that Travelers was aware of the race, sex, age, disability, or familial status of

13   those tenants.  Without Travelers' awareness, there cannot be an intentional action taken on

14   account of the protected activity.  *See, e.g.*, *Nelms*, 2011 WL 1237882, at *18 ("Regarding the first

15   element of this test, the defendant necessarily must have known of the protected activity.").  Third,

16   "adverse action" requires coercion, intimidation, threats or interference.  42 U.S.C. § 3617.

17   Application of a commercial insurer's facially neutral underwriting guidelines under these

18   circumstances cannot reasonably be considered coercion, intimidation, threats or interference.

19   Thus, Plaintiffs cannot make out a *prima facie* interference claim.[17]  Even if Plaintiffs could make

20   out a *prima facie* case, Travelers would still be entitled to summary judgment because it has come

21   forward with direct evidence that its Apartment Pac underwriting guidelines were implemented for

22   business purposes rather than because of intentional discrimination.  Plaintiffs have failed to come

23   forward with "specific and substantial" evidence required to defeat summary judgment on intent.

24

25

---
[17]    The two cases Plaintiffs rely on are distinguishable.  *Secretary v. Carter* is a 23 year old

26   decision from an administrative law judge in a case where, unlike here, the government as
     plaintiff had "strong evidence" of discriminatory intent.  No. HUDALJ 03-90-0058-1,

27   1992 WL 406520, at *6 (H.U.D. A.L.J. May 1, 1992) (initial decision & order).  *Nevels v.
     Western World Insurance* is a decision where the Defendant conceded that its decisions

28   were "based on disability."  359 F. Supp. 2d 1110, 1118, 1123 (W.D. Wash. 2004).

Because California federal courts analyze state law interference claims like they do federal interference claims and because Plaintiffs failed to show intent or pretext, summary judgment must also be granted on Plaintiffs' state law interference claim. *See Egan v. Schmock*, 93 F. Supp. 2d 1090, 1094 (N.D. Cal. 2000) ("In the absence of any California authority to the contrary, this Court will interpret § 12955.7 of the FEHA consistently with § 3617 of the FHA.").[18]

## C.  There Is No Genuine Dispute as to Any Material Fact Regarding Disparate Impact

Plaintiffs' disparate impact claim must be dismissed because Plaintiffs have no evidence of any impact on anyone.[19]  The Ninth Circuit requires that Plaintiffs show both discriminatory impact and causation. *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) (Plaintiffs must "prove causation; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the [employment] practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.") (quotations omitted)); *Darensburg v. Metro. Transp. Comm'n*, 611 F. Supp. 2d 995, 1042 (N.D. Cal. 2009) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994–95 (1988)), *aff'd*, 636 F.3d 511 (9th Cir. 2011).[20]  Moreover, the impact shown must be significant. *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 711 (9th Cir. 2009).  The standards for a disparate impact claim under California's Fair Employment and Housing Act are the same. *City & County of San Francisco v. Fair Emp't & Hous. Comm'n*, 191 Cal. App. 3d 976, 986 (Ct. App. 1987).[21]

Plaintiffs filed this disparate impact claim based on the theory that Travelers' underwriting

---

[18]   Plaintiffs concede that the analysis is the same, describing the FEHA interference provision as "parallel" and citing only federal law for its construction.  Opp. at 21–23.

[19]   The Supreme Court is expected to address the issue of whether disparate impact claims are cognizable under the FHA this term in *Inclusive Communities Project v. Texas Department of Housing and Community Affairs*, No. 13-1371.

[20]   Plaintiffs skirt their lack of causation, simply arguing that it is a factual question "typically resolved by a jury."  Opp. at 27 (citing *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013).  In any event, the "causation" question in *Pacific Shores* was *not* whether the defendant's policy caused an impact on the protected class, but whether that impact in turn had caused plaintiff's business losses.  730 F.3d at 1170.

[21]   The California Supreme Court has held that private housing actions based on tenants' level of income do not create a disparate impact as a matter of law, even if certain groups are disproportionately represented in the low-income population.  *Harris v. Capital Growth Investors XIV*, 805 P.2d 873, 890 n.16 (Cal. 1991), *superseded by statute on other grounds.*

guidelines "mak[es] housing unavailable" to members of certain protected classes.  Am. Compl. at
1, 25, ECF No. 13.  Plaintiffs now allege that a disparate impact is simply "racial discrimination."
Opp. at 24.  Plaintiffs lift a snippet from *Keith v. Volpe*, 858 F.2d 467, 482 (9th Cir. 1988), stating
that "conduct has a 'discriminatory effect' if it 'actually or predictably results in racial
discrimination.'"  But *Keith* specifically defined the alleged impact at issue there as "making
housing unavailable."  Plaintiffs' proposed definition of "discriminatory effect" is entirely
circular, not supported by *Keith*, and would gut the Ninth Circuit's requirement of proof of actual
impact.  *See, e.g.*, *Gamble v. City of Escondido*, 104 F.3d 300, 306–07 (9th Cir. 1997); *Pfaff v.
U.S. Dep't of Hous. & Urb. Dev.*, 88 F.3d 739, 747 n.3 (9th Cir. 1996).

Plaintiffs argue that Travelers' underwriting guidelines "discourage" landlords from
renting to Section 8 tenants.  Opp. at 26.[22]  Plaintiffs want the Court to infer that this
"discouragement" could lead to landlords withdrawing or refraining from participating in the
Section 8 program, possibly making housing unavailable to Section 8 tenants.  Plaintiffs offer no
evidence to support this theory.  This is a quintessential example of an attempt to show a
"circumstance[] raising an inference of discriminatory impact" that the Ninth Circuit has
repeatedly rejected as proof of a disparate impact *prima facie* case.  *See, e.g.*, *Palmer v. United
States*, 794 F.2d 534, 538–39 (9th Cir. 1986); *see also Gamble*, 104 F.3d at 306–07; *Pfaff*, 88 F.3d
at 747 n.3.[23]  And in any event, Plaintiffs have no evidence of any such effect.

Plaintiffs also contend that "Travelers deprives landlords of a necessity – insurance

---

[22]  Plaintiffs appear to claim that this "discouragement" itself is unlawful under 24 C.F.R. §
100.70(c).  But that regulation applies only to the discouragement of prospective tenants or
purchasers, not to the discouragement of landlords seeking to rent out their property.  24
C.F.R. § 100.70(c).  Moreover, "discouragement" claims are based on disparate treatment,
not disparate impact, requiring a showing of intent.  *See Harris v. Itzhaki*, 183 F.3d 1043,
1053 (9th Cir. 1999).  Finally, to the extent Plaintiffs claim that this "discouragement" is
the "impact" at issue, they are focused on the wrong group, as they are required to show a
disparate impact on members of a protected class, which landlords are not.  *See, e.g.*, *Pfaff*,
88 F.3d at 745.  *See also* Reply Ex. AG (Bradford Dep.) at 80:22–81:1 (admitting that
"landlords per se are not a protected class").

[23]  The three cases cited by Plaintiffs to support their "inference" are all disparate *treatment*
cases, not disparate *impact* cases (and all were decided in the context of motions to
dismiss, not summary judgment).  *See NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287,
290 (7th Cir. 1992); *Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1 (D.D.C. 1999); and *Nevels*,
359 F. Supp. 2d 1110.

coverage – unless they refuse to rent to Section 8 voucher holders." Opp. at 26.[24]  This is both

false and insufficient to establish disparate impact.  Not only do other insurance companies offer

insurance coverage to landlords who rent to Section 8 tenants, *see, e.g.*, Ex. A, at 105:5–11; Ex.

M, at MJ01865, MJ01868–69, the Joneses actually received quotes from a number of them—

including a Travelers affiliate—and purchased insurance from the carrier who had insured them

prior to Travelers.  The fact that the Joneses' properties are ineligible under the lower-cost

Apartment Pac policy does not establish disparate impact.  Plaintiffs fail to offer any evidence

suggesting that landlords would stop renting to Section 8 tenants or raise their rents if insurance

prices were higher for those landlords (a fact they have failed to allege or attempted to prove) or,

as discussed below, that anyone has been or would be deprived of housing as a result of the

Apartment Pac underwriting guidelines.  Opp. at 26.  The *only* evidence is that the Joneses *did not*

*withdraw* from the Section 8 market, *did not increase rents* for Section 8 tenants, and *did not*

*displace* current Section 8 tenants.  Ex. A (M. Jones Dep.) at 105:5–11; *see also id.* at 74:22–23,

76:20–23, 79:13–22, 80:20–81:1; Ex. B (M. Jones Dep.) at 259:20–260:10, 261:10–15.  Thus,

there was *no impact* on any Section 8 tenants.  *See id.*

Plaintiffs' own expert on the Section 8 voucher program, Catherine Bishop, admitted that

she had never seen any literature, data or studies finding that a lack of property or liability

insurance was a barrier to landlords' participation in the Section 8 program.  Reply Ex. AB

(Bishop Dep.) at 194:12–23.  Plaintiffs' insurance expert, Daniel Schwarcz, also was not aware

any such studies or data.  Reply Ex. AH (Schwarcz Dep.) 183:13–184:5.  The Santa Clara

Housing Authority also is unaware of any owner who stopped accepting Section 8 voucher holders

due to a supposed inability to acquire insurance.  Reply Ex. Y (Burrier Dep.) at 148:14–24.

Indeed, the fact that more than 94% of all Santa Clara Housing Authority tenant housing vouchers

---

[24]   The expert Plaintiffs rely on to try to show an impact admitted in his deposition that he did
not analyze whether Travelers' underwriting guidelines caused a housing shortage,
whether anybody lost their housing or was denied housing as a result of the guidelines, or
whether any tenant suffered anything as a result of any policy of Travelers.  *See* Reply Ex.
AG (Bradford Dep.) at 104:20–24, 107:8–14, 108:10–13, and 111:12–15.  He also
admitted that he did not research whether an increase in insurance costs generally would
cause a landlord not to rent to a Section 8 tenant.  *Id.* at 118:10–13.

---

1  issued are in use strongly supports an inference that those private property owners renting to

2  Section 8 voucher holders have adequate insurance. *Id.* at 34:9–35:21.

3      Presumably, Plaintiffs could have attempted to offer expert evidence concerning insurance

4  availability and pricing, how landlords hypothetically react to such availability and pricing, how

5  housing would be denied disproportionately to protected classes as a result of lack of availability

6  or increased pricing, and ultimately how Travelers' Apartment Pac underwriting in particular

7  resulted or predictably will result in a loss of housing disproportionately to protected classes. But

8  Plaintiffs have offered nothing. In fact, Plaintiffs' expert Daniel Schwarcz had no opinion on

9  whether the premiums charged to the Joneses by their insurer (Crusader) or quoted by Travelers'

10  surplus line affiliate were actuarially unfair. Reply Ex. AH (Schwarcz Dep.) at 95:4–13.

11      Plaintiffs attempt to avoid the requirement that they show impact by asserting that

12  Travelers conflates "disparate adverse effect" theory with "disproportionate representation"

13  theory. Opp. at 25. Plaintiffs' distinction is without legal basis. No court has ever held that a

14  plaintiff can prove a disparate impact claim without showing an adverse disparate impact. Simply

15  showing a correlation between Section 8 tenants and protected classes is insufficient. *See*

16  *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 520–21 (9th Cir. 2011); *see also*

17  *Artisan/American Corp. v. City of Alvin, Tex.*, 588 F.3d 291, 298–99 (5th Cir. 2009). Plaintiffs

18  rely on *Huntington*, but Huntington confirmed the need to establish that a particular zoning

19  ordinance had a substantial disproportionate adverse impact on the availability of housing for

20  minorities. *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 938 (2d Cir.) *aff'd*

21  *in part sub nom. Town of Huntington, N.Y. v. Huntington Branch, NAACP.*, 488 U.S. 15 (1988)).

22  Here, Plaintiffs' expert Calvin Bradford acknowledged that he has made no attempt to analyze

23  whether Travelers' underwriting guidelines cause any loss of housing for Section 8 voucher

24  holders or others. Reply Ex. AG (Bradford Dep.) at 104:20–24, 107:8–14, 108:10–13, and

25  111:12–15. Indeed, at least one other court has rejected a disparate impact claim supported by a

26  similar report from Professor Bradford correlating subsidized housing with protected classes,

27  finding no evidence the challenged practice would make housing unavailable. *City of Joliet v.*

28  *Mid-City Nat'l Bank of Chicago*, No. 05 CV 6746, 2014 WL 4667254, at *18, 24 (N.D. Ill. Sept.

17, 2014) ("[T]he Seventh Circuit has repeatedly held that only significant or substantial discriminatory effects that actually affect the availability of housing by a racial group can constitute a violation of the FHA."); *see also Boykin v. Gray*, 986 F. Supp. 2d 14, 22 (D.D.C. 2013) (granting summary judgment dismissing disparate impact claim where plaintiffs evidence of "impact" showed only the "disproportionate representation of minorities in the District's homeless population").  In sum, Plaintiffs have utterly failed to raise a genuine issue of material fact as to whether Travelers' Apartment Pac guidelines has caused, or predictably would in the future cause, any disparate impact on any protected class.

> ### 1.  Even If Plaintiffs Had Made Out a *Prima Facie* Case of Disparate Impact on a Protected Class, Travelers Has a Complete Business Necessity Defense

Plaintiffs offer only a superficial response to Travelers' business justification.  Plaintiffs repeat their unsupported claim that Travelers' justification is pretextual.  Opp. at 27.  But the only relevant evidence is that Travelers' underwriting guidelines are based on established underwriting principles, the policy is priced based on the guidelines, and subsidized, public or governmental funded complexes, including Section 8 properties, are not appropriate for a highly automated, low-touch, lower-cost product such as the Apartment Pac policy.  *See* Costigan Decl. Ex. A, at 46–48.

Plaintiffs argue that Travelers failed to "enforce its rule" and insured some properties with Section 8 housing.  Opp. at 27.  Travelers did insure some landlords who rented to Section 8 tenants.  Some of these policies were issued because there was an authorized exception based on an individualized assessment of the specific property at issue.  Reply Ex. AC (Wood Dep.) at 219:7–220:1, 233:11–234:4.  Some of these policies were issued because a broker or low-level employee misunderstood, misconstrued, or misapplied Travelers' underwriting guidelines.  Reply Ex. S (Kearney Dep.) at 79:22–80:6.  Insurers regularly make exceptions to underwriting guidelines when warranted by individualized circumstances but that hardly means the guidelines lack a business justification.

Plaintiffs also argue that "Travelers relied entirely on its independent agents to assess whether an applicant had subsidized housing but never gave them any guidance other than the rule itself."  Opp. at 27.  Travelers *does* provide guidance to independent agents through a team of

1    trained underwriters, Reply Ex. AD (Noel Dep.) at 34:10–22, who *did* consult with agents about

2    this guideline.  *See, e.g.*, Reply Exs. AE (Noel Dep. Ex. 96), AF (Wood Dep. Ex. 76).

3        Notably, Plaintiffs never suggest how Travelers could avoid disparate impact liability

4    without tracking data it is not permitted to track and do not propose any less discriminatory

5    practice available to Travelers.  Travelers is unable to remove the guideline without repricing the

6    policy, engaging in the type of manual underwriting that is inconsistent with the Apartment Pac

7    model, or potentially withdrawing from the market altogether.  Kearney Decl. ¶¶ 20–22.

8    Plaintiffs' failure to refute these points justifies summary judgment for Travelers.[25]

9        **2.    Plaintiffs' Claims Are Barred Under the McCarran-Ferguson Act**

10       Plaintiffs admit that "[t]he Fair Housing Act is subject to 'reverse preemption.'"  Opp. at

11   28.  It is undisputed that California insurance law prohibits insurers from considering someone's

12   status as a member of a protected class in connection with an application for insurance.  *See* Cal.

13   Ins. Code § 679.72.  Plaintiffs do not even address the case directly on point, which recently held

14   that "expansion of the FHA to include disparate-impact liability would not only have a wide-

15   ranging disruptive effect on the pricing and provision of homeowner's insurance, but would also

16   require insurers to collect and analyze certain types of race–based data on their clients and

17   prospective clients. . . .  These practices—expressly prohibited in many states—will regularly

18   result in the FHA being 'reverse-preempted' [by] McCarran-Ferguson."  *Am. Ins. Ass'n v. United*

19   *States Dep't of Hous. & Urban Dev.*, No. CV 13-00966 (RJL), 2014 WL 5802283, at *11 (D.D.C.

20   Nov. 7, 2014).[26]

---

21   [25]    It is undisputed that the Section 8 program is entirely voluntary for landlords.  Holding
22       Travelers liable because its guidelines might have some impact on whether a landlord
         decides to participate in a voluntary program is nonsensical.  Plaintiffs argue that landlords
23       and insurers are not similarly situated because Section 8 landlords are subject to additional
         regulatory burdens, but these regulatory burdens are part of Travelers' business
24       justification for its underwriting guidelines.  While *Graoch Associates* from the Sixth
         Circuit stated that it may be possible for someone somewhere "to bring disparate-impact
25       challenges to withdrawals from Section 8," it held that the plaintiffs in that case had failed
         to do so.  *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations*
26       *Comm'n*, 508 F.3d 366, 377–78 (6th Cir. 2007).  Moreover, this statement goes against the
         weight of authority, and even the *Graoch* court agreed that "one cannot bring a disparate-
27       impact challenge to Section 8 non-participation."  *Id.* at 377.

28   [26]    Further, Plaintiffs repeatedly mischaracterize the law.  The California DOI does regulate
         underwriting guidelines that have a rate impact.  *See* Brancart Decl. Ex. 10, at DOI 000649
         ("Any subsequent changes to underwriting guidelines or coverages, terms, covenants and

---

1    **IV.    MOTION TO STRIKE PLAINTIFFS' REBUTTAL EXPERT REPORTS**

2         In accordance with Local Rule 7-3(c), Travelers objects to the "rebuttal" reports of Jacob

3    L. Vigdor and Calvin P. Bradford and portions of the report of Daniel Schwarcz, and requests that

4    they be stricken in relevant part.  Although Plaintiffs never substantively cite these reports, they

5    seek to include them in the record.[27]  Plaintiffs served the Vigdor and Bradford reports on

6    February 5, 2015, after Travelers' had filed its summary judgment motion.  They, for the first

7    time, purport to offer wholly new theories in support of Plaintiffs' *prima facie* claim of disparate

8    impact.  Specifically, Mr. Vigdor asserts in his "rebuttal" report that Travelers' underwriting

9    guidelines will increase costs for landlords, because the insurance market is not sufficiently

10   competitive, and that these higher costs will cause landlords to refuse Section 8 vouchers.  Vigdor

11   Decl. Ex. 1, at 3, 10–11, ECF No. 179-1.  In his "rebuttal" report, Mr. Bradford opines for the first

12   time that certain facts demonstrating the lack of any impact on tenants are "irrelevant" to a

13   disparate impact analysis including whether landlord participation in the Section 8 program has

14   any relationship to increased insurance costs and the general availability of insurance for landlords

15   from other insurers besides Travelers. Bradford Decl. Ex. 2, at 6–7.

16        While the belated opinions offered by Messrs. Vigdor and Bradford are insufficient to

17   establish a *prima facie* case,[28] the Court should strike these opinions as improper "rebuttal"

---

18
19   conditions contained in any forms must be submitted with supporting documentation when
     those changes result in any rating impact.").  California courts regularly rely on legislative
20   history including when bills were considered and rejected.  *See, e.g.*, *Sierra Club v. Cal.
     Coastal Comm'n*, 111 P.3d 294, 304 (Cal. 2005).  Additionally, Plaintiffs' argument that
21   FEHA "overrides" the insurance code based on Section 12993(c) of the California
     Government Code is misplaced.  FEHA only preempts local laws and not state-wide
22   statutes like the insurance code.  *See* Cal. Gov't Code § 12993(c) ("[FEHA] occup[ies] the
     field of regulation of discrimination . . ., exclusive of all other laws banning discrimination
     . . . by any city, city and county, county, or other political subdivision of the state.").

23   [27]  Rule 56(c)(1)(A) provides that a party "must support" factual assertions by "citing to
24   particular parts of the materials in the  record . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  *See*
     Brancart Decl. Exs. 9, 15, 19–23, H, K, P; Vigdor Decl. Ex. 1.  The Court should exercise
25   its discretion to disregard these uncited materials included in the record but never relied
     upon or discussed in any manner.  *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 775
26   (9th Cir. 2002) ("[W]hen a party relies on deposition testimony in a summary judgment
     motion without citing to page and line numbers, the trial court may in its discretion
27   exclude the evidence."); *see also Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v.
     La. Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

28   [28]  For example, neither Vigdor nor Bradford actually attempt to quantify or support any of
     their analysis, and neither suggests that Travelers' Apartment Pac underwriting guidelines

1    evidence.  Courts routinely strike rebuttal reports that belatedly inject new theories or arguments

2    on matters as to which the plaintiff has the burden of proof but were not disclosed in opening

3    expert reports.[29]  Courts do not permit such "sandbagging" because it unfairly immunizes a

4    rebuttal report from "a direct response from any opposing expert" and it "frustrate[s] case-

5    management objectives by complicating the task of planning and preparing the case for trial."[30]

6    Plaintiffs never raised these theories in their initial reports and deprived Travelers of an

7    opportunity to offer responsive expert evidence. [31]

8           Further, Bradford's "rebuttal" opinions are impermissible legal conclusions as to what is

9    legally relevant to a disparate impact analysis and should be stricken on this ground as well.  *See*

10   *Hangarter v. Provident Life & Accident Ins. Co*., 373 F.3d 998, 1016 (9th Cir. 2004).  For the

11   same reasons, paragraphs 8–11, 13, 15–19, and 21–22 of Professor Schwarcz's opening report,

12   and paragraphs 5 and 7 of his rebuttal report reflect legal conclusions based on Professor

13   Schwarcz's experience as a law professor that should be stricken and not considered for purposes

14   of the instant motion.  *See* Schwarcz Decl. Exs. 1, 2, ECF No. 177-1.

15   **V.     <u>CONCLUSION</u>**

16          For all of these reasons, Travelers respectfully requests that its motions be granted.

17

18

---

19          caused or predictably would cause a disparate impact on housing for protected classes.
            Rather, the reports contain vague speculation based on economic theory and "experience"
20          but without employing any reliable methodology.  *See* Vigdor Decl. Ex. 1, at 10
            (speculating only that "economic theory predicts" higher insurance costs for landlords will
21          lead to an impact on tenants); Bradford Decl. Ex. 2, at 7 (speculating that the availability of
            insurance in the marketplace is irrelevant to a disparate impact analysis).

22   [29]   *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No.: 11-CV-02509–LHK, 2014 WL
23          1351040, at *12 (N.D. Cal. Apr. 4, 2014) ("Plaintiffs will not be allowed to 'sandbag'
            Defendants with new analysis that should have been included at the very least in Dr.
24          Leamer's opening merits report."); *Baldwin Graphics Sys., Inc. v. Siebert, Inc.*, No. 03-
            CV-7713, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005) ("A party presents its
            arguments as to the issues for which it has the burden of proof in its initial reports.").

25   [30]   *Oracle v. Google*, No. C 10–03561 WHA, 2011 WL 5572835, at *3 (N.D. Cal. Nov. 15,
26          2011); *see also* Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259
            F.3d 1101, 1106 (9th Cir. 2001).

27   [31]   Travelers reserves the right to move to preclude any of Plaintiffs' experts, including Mr.
28          Vigdor, pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  Due
            to the space allowed for this reply, Travelers cannot present such a challenge at this time.

---

1    Dated:  March 26, 2015                    SIMPSON THACHER & BARTLETT LLP

2
                                              By /s/ Andrew T. Frankel
3                                                  Andrew T. Frankel

4                                             Paul C. Curnin
                                              Andrew T. Frankel
5                                             Matthew T. O'Connor

6                                             CARLSON, CALLADINE & PETERSON

7                                             Robert M. Peterson
                                              Michael C. Cooper
8                                             Melissa A. Dubbs

9                                             Attorneys for Defendant TRAVELERS
                                              CASUALTY INSURANCE COMPANY OF
10                                            AMERICA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28